OMNI CAPITAL INTERNATIONAL, LTD., ET AL. *v.*
RUDOLF WOLFF & CO., LTD., ET AL.

No. 86–740.   Argued October 6, 1987—Decided December 8, 1987

BLACKMUN, J., delivered the opinion for a unanimous Court.

*Robert A. Kutcher* argued the cause for petitioners. With him on the brief was *John D. Fricke. Anita M. Warner* filed a brief for Point Landing, Inc., et al., respondents under this Court's Rule 19.6, in support of petitioners.

*Elliot Paskoff* argued the cause for respondents and filed a brief for respondent Rudolf Wolff & Co., Ltd. *Sheldon H. Elsen, Clement J. Colucci, Jerome Lipper,* and *Michael S. Fawer* filed a brief for respondent Gourlay.

JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents questions concerning the prerequisites to a federal court's exercise of *in personam* jurisdiction.

## I

Petitioners Omni Capital International, Ltd., and Omni Capital Corporation (collectively Omni),[1] New York corporations, marketed an investment program involving commodity-futures trades on the London Metals Exchange. Omni employed respondent Rudolf Wolff & Co., Ltd., a British corporation with its offices in London, as a broker to handle trades on that Exchange. Respondent James Gourlay, a citizen and resident of the United Kingdom, served as Wolff's representative in soliciting this business from Omni.

The United States Internal Revenue Service disallowed income tax deductions, claimed by the participants in Omni's investment program, and did so on the ground that the program's commodities trades on the London Metals Exchange were not bona fide arm's-length transactions. A number of corporate and individual investors who participated in Omni's program then sued Omni in four separate actions in the United States District Court for the Eastern District of Louisiana.[2] The plaintiffs in each action charged that, by misrepresenting its tax benefits and future profits, Omni fraudulently induced them to participate in the investment program. Omni, in turn, impleaded Wolff and Gourlay,[3]

[1] The other petitioners are Richard Friedberg and Michael Stern, officers of Omni, and Northglen Capital Corporation which was named as a defendant with Omni in three of the four consolidated cases now before this Court. Petitioners have filed a single brief.

[2] The plaintiffs were two Louisiana corporations, Point Landing, Inc., and Point Landing Fuel Corporation, and six individuals, William S. and Ruby M. Smith, Frank J. and Brenda A. George, and Dennis M. and Joan Rosenberg. Although all these plaintiffs technically are respondents here, see this Court's Rule 19.6, all of them except the Georges have filed a skeletal brief adopting Omni's brief "as if copied *in extenso*." Brief for Respondents in Support of Petitioners 1.

[3] In the Point Landing suit, Wolff was named as a defendant. In that suit, Omni cross-claimed against Wolff and filed a third-party complaint against Gourlay. In the Smith and George suits, Omni filed a third-party complaint against both Wolff and Gourlay. In the Rosenberg suit, no move was made against either Wolff or Gourlay.

contending that its liability, if any, was caused by their improper trading activities.

The procedural history is complex. The original complaints, filed in 1980 and 1981, charged violations of the Securities Exchange Act of 1934, ch. 404, 48 Stat. 881, as amended, 15 U. S. C. § 78a *et seq.* (1982 ed. and Supp. IV); SEC Rule 10b–5, 17 CFR § 240.10b–5 (1987); and the Securities Act of 1933, 48 Stat. 74, as amended, 15 U. S. C. § 77a *et seq.* (1982 ed. and Supp. IV), and included pendent state-law claims. The four cases were consolidated in the District Court. While they were pending, this Court decided *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Curran,* 456 U. S. 353 (1982). In *Curran,* we recognized an implied private cause of action under the Commodity Exchange Act (CEA), 42 Stat. 998, as amended, 7 U. S. C. § 1 *et seq.* (1982 ed. and Supp. IV). The plaintiffs accordingly amended their complaints to allege violations of §§ 4b and 9(b) of the CEA, as amended, 7 U. S. C. §§ 6b and 13(b).

Wolff and Gourlay moved to dismiss the claims against them for lack of personal jurisdiction, and, as an additional ground, argued that the securities law claims failed to state causes of action. In its initial opinion dated May 13, 1983, the District Court dismissed the securities law claims as having been pre-empted by the CEA but concluded that it could exercise personal jurisdiction over Wolff and Gourlay. App. 6. The court reasoned that, in actions under the CEA, "Congress intended for U. S. courts to exercise personal jurisdiction over foreign defendants not present in the United States to the limits of the due process clause of the Fifth Amendment." *Id.,* at 9. Therefore, the court determined, if "the quality and nature of a foreign defendant's activities . . . in the United States" support a "finding of fair play and substantial justice," personal jurisdiction would be proper. *Id.,* at 9–10. After examining the extent of Wolff's and Gourlay's contacts with the United States, the District Court concluded it had personal jurisdiction.

After this initial decision of the District Court, the Fifth Circuit decided *DeMelo* v. *Toche Marine, Inc.*, 711 F. 2d 1260 (1983). In *DeMelo*, the Court of Appeals concluded that "when a federal question case is based upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, [Federal Rule of Civil Procedure] 4(e) requires that the state's standard of amenability to jurisdiction apply." *Id.*, at 1266. Following that decision by its controlling court, the District Court granted Wolff's and Gourlay's motions for reconsideration, noting that the CEA is silent about service of process for private causes of action. App. 19. Upon its reconsideration, the District Court concluded that, in accord with *DeMelo*, "unless jurisdiction can be asserted under the Louisiana long-arm statute, there is no personal jurisdiction over Wolff or Gourlay." App. 22. Because, in its view, the requirements of the Louisiana long-arm statute[4] were not met, the District Court concluded that it lacked personal jurisdiction over Wolff and Gourlay, and it directed the entry

---

[4] Louisiana's long-arm statute, then in effect, provided in relevant part:

"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

"(a) transacting any business in this state;

"(b) contracting to supply services or things in this state;

"(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;

"(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state . . . ." La. Rev. Stat. Ann. § 13:3201 (West 1968).

Louisiana has amended this statute, see 1980 La. Acts, No. 764, § 2, and 1984 La. Acts, No. 398, § 1, codified at La. Rev. Stat. Ann. § 13:3201 (West Supp. 1987), but no party has argued that the amendments affect the outcome of this litigation. We therefore do not consider them.

of a final judgment dismissing all claims against them. *Id.*, at 23.

The Fifth Circuit decided the ensuing appeals en banc in the first instance and, by a 9-to-6 vote, affirmed. *Point Landing, Inc.* v. *Omni Capital Int'l, Ltd.*, 795 F. 2d 415 (1986). The majority started from "the unmalleable principle of law . . . that federal courts . . . must ground their personal jurisdiction on a federal statute or rule." *Id.*, at 423. In the majority's view, neither the CEA nor the Federal Rules of Civil Procedure authorized service of process upon Wolff or Gourlay, and therefore personal jurisdiction over them was lacking. The dissent conceded that neither the CEA nor Civil Rule 4 provided for service of process on Wolff and Gourlay but would have remedied this "bizarre hiatus in the Rules," 795 F. 2d, at 428, with an ad hoc authorization of service of process on them based on their contacts with the United States as a whole.

Because of a possible conflict with views of the Sixth Circuit expressed in *Handley* v. *Indiana & Michigan Electric Co.*, 732 F. 2d 1265, 1272 (1984), we granted certiorari to decide whether, in this federal-question litigation arising under the CEA, the District Court may exercise personal jurisdiction over Wolff and Gourlay.

## II

Omni's primary and fundamental contention is that in a suit under the CEA, the only limits on a district court's power to exercise personal jurisdiction derive from the Due Process Clause of the Fifth Amendment. The objection of the Court of Appeals, and of Wolff and Gourlay before this Court, is that, even if an exercise of personal jurisdiction would comport with that Due Process Clause,[5] the District Court can-

[5] Under Omni's theory, a federal court could exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits. As was the case in *Asahi Metal Industry Co.* v. *Superior Court of Cal.*, 480 U. S. 102 (1987), "[w]e

not exercise personal jurisdiction over Wolff and Gourlay because they are not amenable to service of summons in the absence of a statute or rule authorizing such service.[6]

Omni attempts to meet this objection in a variety of ways. First, Omni argues that the District Court may exercise personal jurisdiction because Wolff and Gourlay have constitutionally sufficient contacts with the forum and, as well, have notice of the suits. Second, Omni contends that even if a rule authorizing service is a prerequisite to effective service and thus to the exercise of personal jurisdiction, Congress implicitly authorized nationwide service for private causes of action under the CEA. Third, Omni presses upon us the view of the Fifth Circuit dissenters that, even if authorization for service of process is required and cannot be found in a statute or rule, such authorization should be created by fashioning a remedy to fill a gap in the Federal Rules of Civil Procedure. We examine these contentions in turn.

## III

### A

Omni argues that the jurisdictional limits that Art. III of the Constitution places on the federal courts relate to subject-matter jurisdiction only. In this view, although Art. III, § 1, leaves it to Congress to "ordain and establish" inferior federal courts, the only limits on those courts, once established, in their exercise of personal jurisdiction, relate to due process. Thus, Omni contends, the District Court may exercise personal jurisdiction over Wolff and Gourlay if the Due Process Clause of the Fifth Amendment does not forbid it.

---

have no occasion" to consider the constitutional issues raised by this theory. *Id.*, at 113, n.

[6] There is no objection to the method of service in this litigation; the objection is only to amenability to service. See *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F. 2d 415, 424 (CA5 1986).

Omni's argument that Art. III does not itself limit a court's personal jurisdiction is correct. "The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U. S. 694, 702 (1982). Omni's argument fails, however, because there are other prerequisites to a federal court's exercise of personal jurisdiction.

Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publishing Corp.* v. *Murphree*, 326 U. S. 438, 444–445 (1946). Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

## B

The next question, then, is whether there is authorization to serve summons in this litigation. Today, service of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure. Rule 4(f) describes where process "may be served."[7] It authorizes service in the State

---

[7] Rule 4(f) provides:

"All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state."

in which the action is brought, or anywhere else authorized by a federal statute or by the Rules.

The "most obvious reference" of this last provision is to Rule 4(e).[8]   See D. Currie, Federal Courts 373 (3d ed. 1982).   The first sentence of the Rule speaks to the ability to serve summons on an out-of-state defendant when a federal statute authorizes such service.   The second sentence, as an additional method, authorizes service of summons "under the circumstances" prescribed in a state statute or rule.   Thus, under Rule 4(e), a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal jurisdiction.[9]

Omni argues that Wolff and Gourlay are amenable to service under Rule 4(e) because the CEA implicitly "provides for service . . . upon a party not an inhabitant of or found within the state."   Omni points out that, prior to this Court's recognition in *Curran* of an implied private cause of action, all other civil actions under the CEA explicitly authorized nationwide service of process.   See § 6c (in a Commodity Futures Trading Commission (CFTC) action, service authorized "wherever the defendant may be found"), § 6d(4) (in an action

_____

[8] Rule 4(e) provides:

"Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule.   Whenever a statute or rule of court of the state in which the district court is held provides . . . for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule."

[9] This assumes, of course, that the defendant is not "an inhabitant of or found within the state," Fed. Rule Civ. Proc. 4(e), and has not consented to service.

by a state attorney general, service authorized "wherever the defendant may be found"), and § 14(d) (in enforcement action by a beneficiary of a CFTC order, service authorized "anywhere in the United States") of the CEA, as amended, 7 U. S. C. §§ 13a–1, 13a–2(4), and 18(d). Omni contends that this broad avenue for service is mandated by the importance of futures trading to the Nation as a whole. Since this Court concluded that a private right of action was intended as a "tool for enforcement," *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Curran*, 456 U. S., at 393, it must be given the same "dignity" as other enforcement provisions. Accordingly, Omni contends, nationwide service of process is also authorized for the implied private cause of action under the CEA.

Neither the majority nor the dissent in the Court of Appeals found that the CEA contained an implied provision for nationwide service of process in a private cause of action. We, too, decline to draw that inference. After the *Curran* decision, while the present litigation was still pending in the District Court, Congress enacted the Futures Trading Act of 1982, 96 Stat. 2294. That Act amended the CEA by adding § 22, 96 Stat. 2322, 7 U. S. C. § 25, which authorizes explicitly a private right of action for a violation of the CEA. Section 22, however, is silent as to service of process. This contrasts sharply with the other enforcement provisions of the CEA, on which Omni asks us to rely. We find it significant that Congress expressly provided for nationwide service of process in those sections but did not do so in the new § 22. See *Russello* v. *United States*, 464 U. S. 16, 23 (1983). It would appear that Congress knows how to authorize nationwide service of process when it wants to provide for it. That Congress failed to do so here argues forcefully that such authorization was not its intention. Cf. *INS* v. *Hector*, 479 U. S. 85, 88–91 (1986).

The legislative history also supports the conclusion that Congress did not intend to provide nationwide service of process for private actions under the CEA. The House Re-

port on the Futures Trading Act of 1982 noted: "The availability of— . . . private rights of action—supplements, but does not substitute, for the regulatory and enforcement program of the CFTC . . . . The Committee fully expects [it will] not become necessary to rely on private litigants as a policeman of the Commodity Exchange Act." H. R. Rep. No. 97–565, pt. 1, p. 57 (1982). Thus, it is unremarkable that Congress enacted broader service provisions for CFTC actions than for private actions.

That the new § 22 of the CEA does not provide nationwide service of process does not end our inquiry, however, because Omni's cause of action accrued prior to the effective date of that section. See § 22(d), 7 U. S. C. § 25(d). Strictly speaking, Omni's argument may be that nationwide service is authorized under the implied cause of action recognized in *Curran*. This argument, however, is equally without force. See *Gravois* v. *Fairchild*, [1977–1980 Transfer Binder] CCH Comm. Fut. L. Rep. ¶ 20,706, p. 22,875 (ED La. 1978) (no nationwide service of process for implied private cause of action under CEA). The decision in *Curran* gave no consideration to service of process. Inasmuch as Congress carefully provided for service section by section in the CEA, we would not automatically graft nationwide service onto the implied private right of action. Indeed, the CEA's authorization for nationwide service section by section contrasts sharply with the service provisions of the securities laws. Each of those Acts uses a single section to provide for service "wherever the defendant may be found" for any action under the entire chapter. See § 22 of the Securities Act of 1933, 48 Stat. 86, as amended, 15 U. S. C. § 77v, and § 27 of the Securities Exchange Act of 1934, 48 Stat. 902, as amended, 15 U. S. C. § 78aa. In any event, now that Congress has enacted a private cause of action without nationwide service, we have a better perspective on Congress' view of the role of a private action within the statute as a whole. We see no reason to take a different position. Ac-

cordingly, we conclude that a nationwide service provision for a private action was not implicit in the CEA.

Since the CEA does not authorize service of summons on Wolff and Gourlay, we look to the second sentence of Rule 4(e), which points to the long-arm statute of the State in which the District Court sits—here, Louisiana. The District Court held that the requirements of the Louisiana long-arm statute, see n. 4, *supra*, were not met in this litigation. It noted that even the provision allowing a court to rely on the effects that the defendant causes within the State was "clearly not applicable" because it "applies only to a defendant who 'regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state.'" App. 22–23 (quoting La. Rev. Stat. Ann. § 13:3201(d) (West 1968)). Because the terms of the Louisiana statute were not met, the District Court considered a due process analysis unnecessary. Before us, Omni has not contended that Wolff and Gourlay may be reached under the Louisiana long-arm statute. Indeed, Omni has conceded that they may not. See Tr. of Oral Arg. 4. Thus, neither part of Rule 4(e) authorizes the service of summons on Wolff and Gourlay.

### C

The dissenters in the Court of Appeals argued that even if authorization to serve process is necessary and cannot be found in Rule 4(e), the federal courts should act to fill the "interstices in the law inadvertently left by legislative enactment" by creating their own rule authorizing service of process in this litigation. See 795 F. 2d, at 431–432. We decline to embark on that adventure.

As an initial matter, it is unclear at this time whether it is open to us to fashion a rule authorizing service of process. At common law, a court lacked authority to issue process outside its district, and Congress made this same restriction the general rule when it enacted the Judiciary Act of Sept. 24, 1789, § 11, 1 Stat. 79. See *Robertson* v. *Railroad Labor*

*Board*, 268 U. S. 619, 622–623 (1925). Thus, specific legislative authorization of extraterritorial service of summons was required for a court to exercise personal jurisdiction over a person outside the district. Even were we to conclude that the bases for the rule in *Robertson* are no longer valid,[10] we would not necessarily have the power to create service-of-process rules. We would have to decide that the provisions of Rules 4(e) and 4(f), in authorizing service in certain circumstances, were not intended to prohibit service in all other circumstances. We would also have to find adequate authority for common-law rulemaking.[11] We need not decide these questions, however, since we would not fashion a rule for service in this litigation even if we had the power to do so.

We would consider it unwise for a court to make its own rule authorizing service of summons. It seems likely that Congress has been acting on the assumption that federal courts cannot add to the scope of service of summons Congress has authorized. This Court in the past repeatedly has stated that a legislative grant of authority is necessary. See, *e. g., Georgia* v. *Pennsylvania R. Co.*, 324 U. S. 439, 467–468 (1945). Indeed, as the dissent in the Court of Appeals conceded, "the weight of authority, both in the cases and in the commentary," 795 F. 2d, at 433, considers statu-

---

[10] The successor to the provision of the first Judiciary Act relating to a district court's ability to serve process was revised in 1948, 62 Stat. 869, at which time the express territorial limitation on serving process was dropped. See 28 U. S. C. §§ 1391, 1401, 1693, 1695. See also note following 28 U. S. C. § 112 (1940 ed.) (tracing history of provision prior to 1948 revision). To the extent that the cases cited in *Robertson* rely on principles of territoriality, their force may have been undercut by the decision in *International Shoe Co.* v. *Washington*, 326 U. S. 310 (1945), where the Court held that "presence [of the defendant] within the territorial jurisdiction of a court" was no longer necessary "to subject a defendant to a judgment *in personam*." *Id.*, at 316. We express no view as to continuing validity of *Robertson*'s rationales.

[11] See *Petrol Shipping Corp.* v. *Kingdom of Greece Ministry of Commerce, Purchase Directorate*, 360 F. 2d 103, 107–109 (CA2) (discussing court's authority to fashion an ad hoc rule to govern method of service), cert. denied, 385 U. S. 931 (1966).

tory authorization necessary to a federal court's service of summons. See, *e. g., Max Daetwyler Corp.* v. *Meyer,* 762 F. 2d 290, 297 (CA3), cert. denied, 474 U. S. 980 (1985); *Wells Fargo & Co.* v. *Wells Fargo Express Co.,* 556 F. 2d 406, 414–416 (CA9 1977); 2 J. Moore, J. Lucas, H. Fink, & C. Thompson, Moore's Federal Practice ¶ 4.02[3], p. 4–67 (1987); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1075, p. 302 (1969).

The strength of this longstanding assumption, and the network of statutory enactments and judicial decisions tied to it,[12] argue strongly against devising common-law service of process provisions at this late date for at least two reasons. First, since Congress concededly has the power to limit service of process, circumspection is called for in going beyond what Congress has authorized. Second, as statutes and rules have always provided the measures for service, courts are inappropriate forums for deciding whether to extend them. Legislative rulemaking better ensures proper consideration of a service rule's ramifications within the pre-existing structure and is more likely to lead to consistent application.[13]

---

[12] Presumably acting on this widespread understanding that federal courts may serve process nationwide only when a federal statute authorizes such service, Congress has carefully provided for that kind of service of process when it so desired. See 2 J. Moore, J. Lucas, H. Fink & C. Thompson, Moore's Federal Practice ¶ 4.42[2.−1], pp. 4–386 to 4–391 (1987) (listing over 15 statutes).

[13] The legislative history of the Futures Trading Act of 1986, 100 Stat. 3556, provides an example why courts should not construct service of process rules ad hoc, even if they have the power to do so. Section 103 of that Act, 100 Stat. 3557, 7 U. S. C. § 15 (1982 ed., Supp. IV), amended the CEA to allow the CFTC to serve subpoenas outside the United States in the manner prescribed by the Federal Rules of Civil Procedure. The Conference Committee, however, expressed concern about the possibility of disrupting the Nation's foreign policy objectives and stated a preference that the new power be exercised with circumspection. See H. Conf. Rep. No. 99–995, pp. 21–22 (1986). We also note that with this amendment of the CEA, Congress declined still another opportunity to authorize nationwide service of process for a private action under the CEA.

Nothing about this case impels us to a different conclusion. If we do not create a rule here, the only harm to federal interests is the inability of a private litigant to bring a CEA action in the United States against an alien defendant who is not within the reach of the state long-arm statute. Since the CEA authorizes broader service of process in other enforcement actions, aliens cannot consider themselves immune from the Act's provisions. Also, a British court may be willing to enforce the CEA itself, if Omni brings suit against Wolff and Gourlay there.

We are not blind to the consequences of the inability to serve process on Wolff and Gourlay. A narrowly tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable state long-arm statute, might well serve the ends of the CEA and other federal statutes. It is not for the federal courts, however, to create such a rule as a matter of common law. That responsibility, in our view, better rests with those who propose the Federal Rules of Civil Procedure and with Congress.

## IV

In summary, the District Court may not exercise jurisdiction over Wolff and Gourlay without authorization to serve process. That authorization is not found in either the CEA or the Louisiana long-arm statute to which we look under Rule 4(e). We reject the suggestion that we should create a common-law rule authorizing service of process, since we would consider that action unwise, even were it within our power.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*