UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARY VIRGINIA HARDING,
<u>Plaintiff-Appellant,</u>

v.

WILLIAMS PROPERTY COMPANY, d/b/a

No. 96-2713

Smithy Braedon/Oncor
International; WILLIAMS PROPERTY
VENTURE, d/b/a Smithy
Braedon/Oncor International,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CA-96-895-HAR)

Argued: March 2, 1998

Decided: August 31, 1998

Before WILKINSON, Chief Judge, and WILLIAMS and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Martin Lee Lowy, Dallas, Texas, for Appellant. Ann-
Marie F. Magruder, Cynthia Ruth Cook, MAGRUDER & ASSO-
CIATES, P.C., McLean, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mary Virginia Harding appeals the dismissal of this action she brought against her former employer and a successor entity for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. The dismissal was based on failure to effect timely service of process and was hence without prejudice. Because her claims were by then time barred, however, Harding could not reinstitute them. Instead, she brings this appeal. We affirm the judgment of the district court.

I.

The facts underlying Harding's complaint are of little relevance to the issues before us. She was employed by appellee Williams Property Company (WPC) at an office in Maryland. During her tenure, which ended with her firing in late March or early April 1993, she asserts that she was subjected to gender discrimination and retaliation for reporting the discrimination. WPC ceased operations in November 1993 upon the formation of Williams Property Venture (WPV). WPV never employed Harding, but it purchased some or all of WPC's assets.

After she left WPC, Harding moved to Texas. On February 6, 1995, nearly two full years after her termination, Harding filed this suit against WPC and WPV in the United States District Court for the Northern District of Texas. Her counsel sent letters to attorneys for the defendants asking whether they would accept service of the summons,[1] but they declined.

_____

[1] Harding was apparently aware of WPC's counsel's identity from prior state court litigation.

2

On June 6, 1995, the very last day allotted for service by Fed. R. Civ. P. 4(m),**2** Harding delivered a copy of the summons and complaint to the Secretary of State of Texas as statutory agent for nonresident corporations lacking a designated agent for service of process. See Texas Civil Practice & Remedies Code,§ 17.044. The Secretary of State was unable to forward the papers to the defendants because Harding had failed to provide an address for the forwarding. Upon learning of this omission, Harding identified Jerome Williams as a person authorized to accept process for the defendants. This identification was erroneous.

On July 25, 1995, Harding delivered another summons and complaint to the Secretary of State. This one identified Lawrence Leber at WPC's office in Fairfax, Virginia, as the person to whom the papers should be forwarded.**3** The Secretary of State performed the forwarding function on July 26, 1995.

The defendants moved to dismiss on a variety of grounds, including insufficient service, improper venue, and lack of personal jurisdiction. In response, Harding filed a response and motions for change of venue and for an extension of time to effect service. On January 25, 1996, the district court granted the motion to dismiss. The court held that the defendants did not have sufficient contacts with Texas to subject them, in accord with due process, to personal jurisdiction there.

Harding could have appealed this final judgment to the Court of Appeals for the Fifth Circuit. Instead, she moved for reconsideration.

_____

**2** Rule 4(m) states:

> Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to[Rule 4(f) or 4(j)(1)].

**3** Mr. Leber was president of WPC.

3

She did not ask the district court to rethink its ruling and reinstate the case to that court's docket; rather, she requested that, "in the interest of justice," the court transfer the case under 28 U.S.C. § 1406(a) to a district in which personal jurisdiction was present and venue would lie. The district court granted the motion.[4] It vacated the dismissal, and, based on the premise that its finding of no personal jurisdiction subsumed a finding of improper venue, it deemed a transfer appropriate. Finally, the court determined that the District of Maryland was the proper transferee court, inasmuch as WPC employed Harding in Maryland and the alleged assault and retaliatory termination occurred there. See 42 U.S.C. § 2000e-5(f)(3) (venue of Title VII suit lies in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice").[5]

The transferred case was entered onto the docket of the Maryland district court on March 25, 1996. Harding took no immediate steps to prosecute her case. On June 10, 1996, the defendants again moved to dismiss. They pointed out that they had still not been properly served; indeed, though the case had been pending in Maryland for ten weeks, Harding's counsel had not even so much as entered an appearance there.

Two weeks later, Harding finally appeared through counsel and responded to the motion. WPC filed a reply on July 9, and, two days

_____

[4] A court's lack of personal jurisdiction does not deprive it of the power to transfer a case under 28 U.S.C. § 1406(a). Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962).

[5] Venue of a Title VII action is therefore "circumscribed by the very statute that gives ... the right to sue in the first place." Bolar v. Frank, 938 F.2d 377, 378 (2nd Cir. 1991) (per curiam). This specific circumscription overrides the general venue statute at 28 U.S.C. § 1391. See Johnson v. Payless Drug Stores Northwest, Inc., 950 F.2d 586, 587-588 (9th Cir. 1991) (per curiam), cert. denied, 505 U.S. 1225 (1992). Accordingly, Harding's action could not have proceeded in Texas even had the defendants been subject to personal jurisdiction there.

4

later, Harding sought and received a new summons from the Maryland court.

On August 1, 1996, a return of service executed by a private process server was filed in the district court. The process server reported that he had visited the defendants' "dwelling house or usual place of abode" on July 17, 1996, and had left the summons and complaint with "Robert Orr," a "person of suitable age and discretion then residing therein."

WPC and WPV moved to quash service. In a series of affidavits, they asserted that the process server had appeared at WPV's place of business and had asked for Mr. Leber. Upon being told that Leber was in a meeting and could not come out, the server left, only to return a short while later. He tossed the papers on the receptionist's desk and left.

The defendants further asserted that (i) the receptionist is not authorized to accept service of process, (ii) the office is not a "dwelling house" or "place of abode," (iii) no one named "Robert Orr" works for WPC or WPV, (iv) David Orr is a WPV employee but does not reside at the office, and (v) the server did not deliver or attempt to deliver the papers to David Orr.

The district court granted the motion to dismiss. The court reasoned that the Texas court's lack of personal jurisdiction necessarily rendered Harding's attempts to serve the Texas Secretary of State ineffective, that this ineffectiveness was not cured by the transfer order standing alone, and that Harding had failed to establish "good cause" warranting an extension of the 120-day limit for service set by Rule 4(m). Harding appeals.

II.

As her first question on appeal, Harding asks, "Did the District Court for the Northern District of Texas err in holding that Defendants were not subject to personal jurisdiction in Texas in this action?" We cannot answer this question, at least not under the terms in which it is posed. Subject to exceptions not relevant here, "appeals

5

from reviewable decisions of the district and territorial courts shall be taken . . . (1) [f]rom a district court of the United States to the court of appeals for the circuit embracing the district[.]" 28 U.S.C. § 1294.

We have interpreted § 1294(1) to prohibit review of pre-transfer decisions by district courts outside this circuit. E.g., Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1257 (4th Cir. 1991); Linnell v. Sloan, 636 F.2d 65, 67 (4th Cir. 1980). Consequently, we may not decide whether the Texas district court erred.

On the other hand, a transferred case comes with a history of interlocutory decisions, any or all of which are subject to modification in the transferee court at any time before final judgment. See Fed. R. Civ. P. 54(b); Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988). If the transferee court modifies an order of the transferor court, or on motion of a party is urged to do so and refuses, we have the power to review that decision. [6] In a similar vein, matters heard by the transferee court may involve subsidiary questions of law already decided by the transferor court. To the extent, at least, that such subsidiary questions of law are actually disputed before and resolved by the transferee court (as opposed to being acquiesced in by the parties), we would seem to have jurisdiction to review them.

The simplest way for a litigant opposing an accomplished transfer to assure some appellate review of it is to move to retransfer the case.[7] Harding filed no such motion here; if she had, it would surely have

---

[6] Because, however, the district court's conscious decision to adhere to an order of the transferor court is an application of the law-of-the-case doctrine, our review is limited to determining whether the transferor's rulings were "clearly erroneous and would work a manifest injustice." Arizona v. California, 460 U.S. 605, 618 n.8 (1983). "Certainly, this standard is far more deferential than direct appellate review." Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1518 (10th Cir. 1991).

[7] This method is simple, but it is not particularly potent because the district courts should hesitate to retransfer cases."[T]ransferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." Christianson, 486 U.S. at 816.

6

been denied summarily. After all, the transfer was the desired result of Harding's own motion. Her case had been dismissed for lack of personal jurisdiction. She could have fought the ruling or reckoned with the effect of it, and she chose the latter. Having deliberately forgone the opportunities for reconsideration or review of the personal jurisdiction issue in the Texas district court and in the Court of Appeals for the Fifth Circuit, she could scarcely have expected the transferee district court to revisit it.

It did not. The Maryland court simply noted that the Texas court had found no personal jurisdiction, and it then applied Rule 4(e)(1) in holding that any attempted service of process under Texas state law was necessarily ineffective. While we can and do review this application of Rule 4(e)(1), review is not difficult. Service by a method provided by the law of the forum state is effective only if the courts of the forum state could acquire personal jurisdiction using that same method. Omni Capital International v. Rudolf Wolff & Co., 484 U.S. 97, 108 (1987).

III.

Harding next asserts that service of process in the transferee court was unnecessary under the circumstances of her case, i.e. where the defendants had actual notice of the suit and the ineffectiveness of service flowed from the transferor court's lack of personal jurisdiction over them. We disagree.

Fed. R. Civ. P. 4(a) strongly implies that service of a summons issued by the transferee court is a prerequisite to personal jurisdiction. The rule states, in relevant part: "The summons shall be signed by the clerk, bear the seal of the court, identify the court and the parties, be directed to the defendant, and state the name and address of [the plaintiff or his attorney]." (emphasis added).

The character and purpose of the summons confirm the accuracy of this implication. The summons is one means by which the federal courts assure defendants of due process of law. Omni Capital, 484 U.S. at 104. It must provide the defendant with sufficient information to permit him to fairly defend himself at a proper time and place, but it is much more than a mere notice. It is an exercise of the power of

7

the issuing court to deprive the defendant of his liberty or property should he not appear or appear but not prevail. Consequently, it is essential to a summons' validity that the issuing court have the power to effect the deprivation.

> Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."

Id. (quoting Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444-445 (1946)).

It follows, then, that previously unperfected personal jurisdiction does not attach in a transferee district court until a summons issued by that court is properly served. Buggs v. Ehrnschwender, 968 F.2d 1544 (2nd Cir. 1992).

Harding relies heavily on Bentz v. Recile, 778 F.2d 1026, 1028-1029 n.5 (5th Cir. 1985) (per curiam), in which a judgment was affirmed notwithstanding the lack of service after transfer from a district court that lacked personal jurisdiction. The court acknowledged that the transfer order itself did not cause jurisdiction to attach and that service in the transferee court was "better practice." It nevertheless affirmed, because, in its words, "a remand .. . would . . . be merely a useless act and a waste of judicial resources." The court supported this holding by pointing out that the defendants had received adequate notice of the action, and, perhaps more critically, that there were no statute of limitations or choice of law issues in the case.

Like the Second Circuit in Buggs, "[w]e confess some puzzlement over Bentz,"[8] and we can only conclude that the panel must have found that any error was harmless. So understood, Bentz does not

_____

[8] 968 F.2d at 1547. The court continued, "There was nothing in [Bentz], so far as we can determine, other than the transfer that `in and of itself' cured the constitutionally defective service under the Mississippi long-arm statute." Id.

8

conflict with our holding today, because the outcome-determinative statute of limitations defense present here quells any conceivable assertion of harmless error.**9**

IV.

Finally, Harding argues that the district court should have given her 120 days from the docketing of the transfer to effect service. Even if we were to agree with her, her case might still be subject to dismissal on remand, because the service of the Maryland summons (on the 114th day, we should add) remains subject to a unresolved motion to quash. We do not agree with her.

Rule 4(m) is not ambiguous. Unless the summons is served "within 120 days after the filing of the complaint," the district court is empowered to dismiss the suit without prejudice. Harding asserts that the rule cannot mean what it says in transferred cases, because good faith litigation in the transferor court may consume most or all of the 120 days.

The rule is sensitive to Harding's fears. First, and perhaps foremost, 120 days is a long time, and nothing in the rule requires or even encourages a party to wait until the very last day before attempting service. Prompt attempts at service, even if constitutionally ineffective, can bring personal jurisdiction and venue issues to the fore with time to spare for re-service in a transferee court.

Second, where, after protracted litigation, a case is transferred "in the interest of justice," we would generally expect the transferee court to find "good cause" to extend the period for service for an "appropriate period" under the last clause of the first sentence in Rule 4(m). The length of any such "appropriate" period is committed to the district court's discretion, though we would not hesitate to correct an abuse of that discretion.

In the case of a transfer after protracted but diligent litigation, we

_____

**9** Our restraint at rejecting <u>Bentz</u> should not be read as an endorsement of it.

think that there would rarely if ever be a need for a 120-day period. Indeed, in the usual case the transfer to a more appropriate district will have removed most obstacles to prompt and certain service.

Thus, even if Harding had demonstrated diligence throughout the case, the 114-day minimum period she needs to even place the motion to quash in issue would probably be excessive. She was not diligent; in the district court's words, "neglect would be a better term to describe Plaintiff's efforts, or lack thereof, to effect service following the initiation of this suit." Harding v. Williams Property Co., No. HAR 96-895, slip op. at 8 (D. Md., Oct 11, 1996). The district court did not abuse its discretion by declining to find"good cause" for the extension of time.[10]

The judgment of the district court is affirmed.

AFFIRMED

_____

[10] Harding argues that the transfer "in the interest of justice" by the Texas court compelled the Maryland court to give her some time to effect service. As a hypothetical matter in a run-of-the-mine case, there is merit to her argument. But the point here is whether the court abused its discretion in declining to give her at least 114 days to do so. We can review things only as they happened. Had she attempted to effect service within a few days or weeks of the transfer, the district court might have seen things somewhat differently.