NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0861n.06

No. 14-3159

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Nov 14, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WILLIAM WELLS; PRISCILLA WELLS; | ) | |
| JALISA GIBSON; SHANAY GIBSON; J.W., | ) | |
| by his next best friend Priscilla Wells; and | ) | |
| J.D.W., by his next best friend Priscilla Wells, | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| Plaintiffs-Appellees, | ) | District of Ohio |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON RHODES, | ) | |
| | ) | |
| Defendant, | | |
| | | |
| and | | |
| | | |
| D.G., a minor; LARRY MATTHEW | | |
| GANDEE; ALISA DAWN GANDEE, | | |
| | | |
| Defendants-Appellants. | | |
| _____/ | | |

**Before: GUY, ROGERS, and DONALD, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Defendants Larry Matthew Gandee and his son D.G. appeal the entry of default judgment against them, and the denial of their motion for relief from judgment under Fed. R. Civ. P. 60(b)(4), arguing that the judgments are void for lack of personal jurisdiction because neither defendant was properly served with a summons and a copy of the complaint. We affirm the default judgment entered against Larry Gandee because he voluntarily submitted himself to the court's jurisdiction during an evidentiary hearing with

respect to the motion for default judgment against Alisa Gandee (who had been properly served). However, because personal jurisdiction was not established with respect to D.G., we reverse in part, vacate the default judgments entered against D.G., and remand the matter for entry of an amended judgment and such other proceedings as are consistent with this opinion.[1]

## I.

Plaintiffs William and Priscilla Wells and their children Jalisa Gibson, Shanay Gibson, J.W., and J.D.W., who are all African-American, brought this action to recover damages arising from the discovery of a charred cross on the lawn of their home in a rural area of Marengo, Ohio, on the morning of March 3, 2011. The night before, after drinking beer at D.G.'s house, D.G. and Brandon Rhodes, both of whom are white, constructed a five-foot-tall wooden cross; wrote "KKK Will Make U PAY" and the word "NIGGER" in permanent marker on the cross; and drove to plaintiffs' home, where they lit the cross on fire before fleeing. D.G., who was 16 years of age at the time and attended high school with three of the plaintiffs, was heard taking credit for the cross burning. Rhodes, who graduated from the same high school two years earlier, admitted his involvement shortly after the incident.

A complaint filed on March 11, 2011, sought damages and injunctive relief against Rhodes and D.G. for violations of 42 U.S.C. §§ 1982, 1985(3) and 3617. An amended complaint adding claims for ethnic intimidation under Ohio Rev. Code § 2307.70 against Rhodes, D.G., and D.G.'s parents, Alisa and Larry Gandee, was filed on April 7, 2011. This appeal does not concern Rhodes, who answered, testified by deposition, and finally settled with plaintiffs after the district court entered partial summary judgment against him. *See Wells v. Rhodes*, 928 F.

---

[1]To the extent that we reverse, defendants asked that we enter judgment of dismissal for failure to serve the complaint within 120 days pursuant to Fed. R. Civ. P. 4(m). This request is one that should be directed to the district court.

Supp. 2d 920 (S.D. Ohio 2013).[2]

Alisa Gandee was personally served with a summons and copy of the complaint at her place of employment on June 8, 2011. It is conceded that this satisfied the requirements for personal service as to her under Fed. R. Civ. P. 4(e). Also, as the returns of service filed in the district court reflect, plaintiffs delivered the summons and complaint for both Larry Gandee and D.G. to Alisa Gandee at her place of employment on June 8, 2011. Although not challenged prior to the entry of default judgment, there is no dispute on appeal that this did not satisfy the requirements for service on Larry Gandee or D.G. under the federal and incorporated state rules for service of process on an individual or minor residing in the judicial district. *See* FED. R. CIV. P. 4(e) and (g); OHIO R. CIV. P. 4.1 and 4.2(B). Defendants did not deny, however, that they received actual notice of the suit.

## A.    First Default Judgment

Plaintiffs moved for entry of default judgment against Alisa Gandee after she failed to answer or file a responsive pleading. Default was entered against her on August 2, 2011, and the motion for default judgment was referred to a magistrate judge for a hearing on August 22, 2011. At that hearing, Alisa Gandee appeared without counsel and was accompanied by her husband Larry Gandee. D.G. was not present. Plaintiffs' motion had not requested default judgment against Larry Gandee or D.G., and plaintiffs' counsel later acknowledged having had difficulty serving them.

---

[2]Under Ohio Rev. Code § 2307.70 any person who suffers an injury or loss to person or property as a result of certain acts—including setting a fire on the land of another with the purpose of interfering with its use or enjoyment because of race, color, religion or national origin—has a civil action for damages against the actor, as well as the parent of a minor who commits such acts. The parent, who is jointly and severally liable with the minor, may be liable for compensatory damages not to exceed $15,000, plus costs, expenses, and attorney fees. *See* OHIO REV. CODE § 2307.70(B)(1).

The evidence presented at the hearing included the prior deposition testimony of Rhodes concerning D.G.'s actions and testimony from five of the plaintiffs concerning the emotional distress they suffered as a consequence of D.G.'s actions. Alisa Gandee also testified that D.G. resided with her. This appeal does not challenge the evidence offered; rather, the hearing is significant to this appeal because the district court found that Larry Gandee had submitted himself to the jurisdiction of the court by his participation in the hearing. The transcript of the hearing reflects that Larry Gandee appeared without counsel, addressed the court, cross-examined a witness, and made statements for the record concerning the merits of the suit.

The magistrate judge issued a report and recommendation on September 22, 2011, which focused primarily on questions of liability and damages that are not at issue on appeal. It referred to the proof of service in the record for Larry Gandee and D.G., which had not been objected to, and recommended that default judgment be entered with respect to them as well. Lastly, it advised that failure to object would waive de novo review by the district court and the right to appeal the judgment. No objections were filed.[3]

On December 7, 2011, the district court adopted the report and recommendation and granted plaintiffs' motions for default judgment against all three defendants. Plaintiffs were awarded compensatory damages totaling $12,500, plus reasonable costs and attorney fees under Ohio Rev. Code § 2307.70. Plaintiffs were later awarded $26,139.13 in costs and attorney fees in connection with those claims.

An appearance was filed by counsel on behalf of all three defendants on February 28, 2012. Counsel moved for relief from judgment on behalf of Larry Gandee and D.G. on March 12, 2012, relying on the defective service and failure to appoint a guardian ad litem to represent

---

[3]The report and recommendation was mailed to the home address provided by Alisa Gandee, and executed acknowledgements of receipt on behalf of both Larry Gandee and D.G. were filed in the district court.

D.G. prior to entry of default. The district court denied the motion in an order entered June 8, 2012. Defendants filed an interlocutory appeal from that order, which this court dismissed without prejudice.

## B.     Second Default Judgment

Plaintiffs moved for summary judgment against D.G. and Rhodes on the remaining claims. D.G. took the position, through counsel, that the earlier default judgment had resolved all of the claims against him, and he moved for clarification to that effect. Counsel also preserved D.G.'s objection to the court's exercise of personal jurisdiction over him. After further briefing, the district court found that the federal claims against D.G. had not been resolved and directed plaintiffs to either dismiss them or seek default. Plaintiffs chose to move for entry of default judgment.

Default was entered against D.G. on November 18, 2013, and a hearing was scheduled for December 18, 2013. D.G. did not answer, seek to set aside the default, or oppose the entry of default judgment. Plaintiffs asked the district court to take judicial notice of their prior testimony, which the district court did. Finding that an evidentiary hearing was not necessary, the district court entered default judgment against D.G., concluded that compensatory damages would be duplicative, and awarded plaintiffs $5,000 in punitive damages plus reasonable attorney fees. Plaintiffs were subsequently awarded an additional $4,050 for attorney fees incurred with respect to the federal claims. A final judgment totaling $47,689.13 was entered in favor of plaintiffs on April 9, 2014. This appeal followed.

## II.

Larry Gandee and D.G. contend that the default judgments entered against them are void. "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised

even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). But, a judgment is not void simply because it is erroneous. *Id*. "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id*. at 271. "'[I]f the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).'" *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 611 (6th Cir. 2011) (citation omitted).[4]

"The validity of a court order depends on the court having jurisdiction over the subject matter and the parties." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)). Unlike subject matter jurisdiction, "personal jurisdiction is a due process right that may be waived either explicitly or implicitly," and a defendant's actions "'may amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'" *Id*. at 905 (citation omitted). Nonetheless, "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1473 (2013) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999), and *Omni Capital Int'l. Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)). As the Ohio Supreme Court has explained, personal jurisdiction may be acquired "by service of process upon the defendant, the voluntary appearance

---

[4]Since defendants were residents of the forum state, the fairness of requiring them to appear and defend is not in question. This case concerns the distinct but closely related defense of insufficient service of process, *i.e.*, the "means by which a defendant receives notice of an action and is formally brought within a court's jurisdiction." *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012) (stating that, between the two defenses, "it is relatively easier to find forfeiture of a service defense"); *see* Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction) and 12(b)(5) (insufficient service of process).

and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court." *Maryhew v. Yova*, 464 N.E.2d 538, 540 (Ohio 1984).

## A.       Participation in the Hearing

"'[D]efects in personal jurisdiction are not waived by default when a party fails to appear or to respond . . . until after the default judgment was entered.'" *Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011) (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1121 (6th Cir. 1994)).   The question is whether any appearances or filings in the district court constituted "'legal submission to the jurisdiction of the court.'"  *Id*. at 519 (quoting *Days Inns*, 445 F.3d at 905).  Larry Gandee did not file an answer or other responsive pleading and did not assert that service was defective prior to the entry of default judgment against him.  While mere presence at the hearing would not have constituted a waiver, we agree with the district court that Larry Gandee legally submitted to the jurisdiction of the court by his voluntary appearance and participation in the evidentiary hearing on August 22, 2011.

Briefly, the hearing began with the magistrate judge asking Alisa Gandee whether she had consulted an attorney.  She answered by referring to her husband, who asked if he could "say something for her."  Larry Gandee addressed the court, explaining that although he and his wife regretted and did not condone D.G.'s actions, they had exhausted all of their funds on an attorney for him.  Although the first interjection was to say something for his wife, Larry Gandee did not (and could not) represent her during the hearing.  Nor are we persuaded by defendants' suggestion that Larry Gandee made only "nominal vocalizations" or did not speak on his own behalf.

During the testimony of William Wells, who was the last of the plaintiffs to testify, Larry Gandee interjected himself and briefly cross-examined the witness about his claim that he feared for the safety of his children. In fact, one of the questions he asked was: "How does suing me for a monetary value take away the fear?" At the conclusion of the evidence, the magistrate judge offered Alisa and Larry Gandee the opportunity to make a statement for the record and they both did. Mr. Gandee's comments extended almost two pages of transcript and addressed the merits, offered apologies, and explained his family's position.[5]

After Larry Gandee finished speaking, plaintiffs' counsel orally moved to amend their motion in order to request default judgment against all three defendants. Plaintiffs' counsel raised the question of D.G.'s representation, not sure whether appointment of a guardian ad litem would be appropriate, and stated that the summons and complaint for both Larry Gandee and D.G. had been delivered to Alisa Gandee. The magistrate judge clarified plaintiffs' request, confirmed with plaintiffs' counsel that proof of service had been filed with the court, and stated that he would take the matter under advisement and issue a report and recommendation.

In concluding the hearing, the magistrate judge asked Alisa Gandee to provide a current home address for receipt of the report and recommendation; explained that she and Larry would have 14 days from the date of mailing to file any objections for the district court to consider; and warned that the district court's acceptance of the report and recommendation would result in a collectible judgment. When the magistrate judge added that this was a serious matter that should be considered carefully, Larry Gandee interrupted to ask several questions about the maximum amount of damages that could be awarded to plaintiffs. Finally, Larry Gandee acknowledged the magistrate judge's final warning to look carefully at the report and recommendation and decide

---

[5]Alisa Gandee also addressed the court during the examination of Mr. Wells to explain that they had removed D.G. from school and had him tutored at home.

whether to seek legal advice at that point.

The record demonstrates that Larry Gandee voluntarily appeared and participated in a hearing on the merits without asserting the defective service defense or objecting to the court's jurisdiction over him. We agree with the district court that his actions constituted legal submission to the jurisdiction of the court and forfeiture of the jurisdictional defense. Moreover, despite having participated and been advised of the seriousness of the matter, Larry Gandee did not object to the court's jurisdiction over him at the hearing, after the hearing, or in objections to the report and recommendation that recommended the entry of default judgment against him. Accordingly, the default judgment entered against Larry Gandee is not void for lack of personal jurisdiction.

## B.      Minor Represented By Parents

In denying the Rule 60(b) motion with respect to D.G., the district court relied on Fed. R. Civ. P. 55(b)(2), which allows the court to enter default judgment "against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." The district court found that D.G. had been represented by his mother and father, both of whom had appeared. D.G. argues that he had not been represented because the district court had not appointed a guardian ad litem to represent him pursuant to Fed. R. Civ. P. 17(c)(2), but has offered no authority to support the claim that a court-appointed guardian is required when a parent has appeared. Nor is there any claim that his parents, who were jointly and severally liable with him, were not capable of representing his interests.

That does not answer the question, however, because Rule 55(b)(2) necessarily presupposes that the court has personal jurisdiction over the minor. Rule 4(g) provides that a minor within the judicial district "must be served by following state law for serving a summons

or like process on such a defendant in an action brought in the courts of general jurisdiction of the state where service is made." If D.G. had been *under* 16 years of age, personal service of the summons and complaint on his mother would have satisfied Ohio R. Civ. P. 4.2(B). He was not, and plaintiffs do not argue that service on D.G. was otherwise proper under Ohio R. Civ. P. 4.1 and 4.2.

D.G. did not answer the complaint, file any pleadings, or make a personal appearance prior to the entry of default judgment against him. Nor was any answer pleading or formal appearance made *on his behalf* by either Alisa or Larry Gandee. Neither the appearance by Alisa Gandee at the hearing on the motion for default judgment against her, nor the waiver of the personal jurisdiction defense by Larry Gandee's participation in the hearing, can be deemed to have forfeited D.G.'s defense to the exercise of personal jurisdiction over him. Nor can his further conduct in the subsequent proceedings constitute forfeiture of the defense, where he moved for relief from judgment and preserved his objection to the court's jurisdiction in connection with the entry of the second default judgment against him. Thus, the default judgments entered with respect to D.G. are therefore void and it was error to deny relief under Rule 60(b)(4).

## C.     Prior Notice of Hearing

Larry Gandee and D.G. also argue that the default judgments were void because plaintiffs did not provide them at least seven days' prior notice of the hearing. Specifically, the default judgment rule provides, in part, that: "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." FED. R. CIV. P. 55(b)(2). This notice requirement did not apply, however, because none of the defendants had

appeared prior to the hearing on the motion for default judgment. Larry Gandee seems to argue that the notice requirement was triggered once he appeared at the hearing, but offers no authority to support his claim that this was error. Moreover, because such error would be procedural, the judgment would not be void absent a denial of due process. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Larry Gandee has not shown a due process violation resulted from the failure to give him prior notice of the default judgment hearing. He appeared, did not ask for more time to prepare for a hearing, did not request another hearing while waiting for the magistrate judge's report and recommendation, and did not object to the report and recommendation on that or any other basis before default judgment was entered.

Accordingly, the default judgment entered against Larry Gandee is **AFFIRMED**, the default judgments entered against D.G. are **VACATED**, and the matter is **REMANDED** for entry of an amended judgment and such other proceedings as are consistent with this opinion.[6]

---

[6]Although the notice of appeal was also filed on behalf of Alisa Gandee, no claims of error have been raised with respect to the default judgment entered against her.