**In re Willie Lee COOK and Angela D. Cook, Debtor(s).**

**Willie Lee Cook and Angela D. Cook, Plaintiffs,**

v.

**Department of Safety State of Tennessee and Jackson Metro Narcotics, Defendants.**

Bankruptcy No. 04–12129.
Adversary No. 09–5129.

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Dec. 14, 2009.

C. Jerome Teel, Jr., Teel, McCormack & Maroney, PLC, William B. Mauldin, Pentecost & Glenn, PLLC, John York, Jackson, TN, for Plaintiffs.

Gina Baker Hantel, Office of the Atty General BK Div., Nashville, TN, Jerry P. Spore, Spragins, Barnett & Cobb, PLC, Jackson, TN, for Defendants.

## MEMORANDUM OPINION RE: Plaintiffs' Expedited Motion for Contempt and Sanctions and Defendants' Responses Thereto

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on the debtors' Expedited Motion for Contempt and Sanctions and the defendants' responses thereto on October 29, 2009. FED. R. BANKR.P. 9014. The Court has reviewed the testimony from the hearing and the record as a whole. This memorandum opinion shall serve as the Court's findings of facts and conclusions of law. FED. R. BANKR.P. 7052.

### Findings of Fact

The debtors in this case, Willie Lee Cook and Angela D. Cook, (collectively "debtors"), filed a chapter 13 bankruptcy case on May 13, 2004. The debtors listed three vehicles on schedule D of their petition: a 1999 Nissan Altima, a 1998 Nissan Altima and a 1974 Chevy Cheyenne. The debtors listed Charlotte Auto Sales as the lienholder on the two Nissan Altimas and Cumberland Auto Finance as the lienholder on the 1974 Chevy Cheyenne. Bank Tennessee was later substituted for Cumberland Finance.

Pursuant to the terms of their chapter 13 Plan, the debtors proposed to make monthly payments of $145.00 for the 1999 Nissan, $105.00 for the 1998 Nissan and $80.00 for the Chevy Cheyenne.[1] The debtors' plan was confirmed on July 30, 2004. The debtors surrendered the 1998 Nissan to Charlotte Auto Sales on March 7, 2007. After making all of the required plan payments, the debtors received their chapter 13 discharge on July 14, 2009. The debtors paid the debts to Charlotte Auto Finance and Bank Tennessee in full over the life of their plan.

On February 24, 2009, approximately five months prior to entry of the debtors' discharge, the debtors' 1999 Nissan Altima, ("Nissan"), was seized by the State of Tennessee Department of Safety, ("Department of Safety"), and the Jackson Metro Narcotics Unit, ("Narcotics Unit") pursuant to the Tennessee Drug Control Act, T.C.A. § 39–17–401, et. seq and T.C.A. §§ 53–11–301 through 53–11–452. The debtors filed a complaint for turnover of the Nissan pursuant to 11 U.S.C. § 542(a) on May 15, 2009. The certificate of service attached to the complaint states that debtors' counsel served the debtors,

---

1. According to the petition, the lienholder on the 1974 Chevy Cheyenne was Cumberland Finance. The $80.00 monthly payment was to be applied to a $3,500.00 debt which was secured by the Chevy and personal property.

the Chapter 13 Trustee, the Department of Safety, and the Narcotics Unit with a copy of the complaint. Service on the Department of Safety was sent to 1150 Foster Avenue, Nashville, Tennessee, ("Foster Avenue address"), and service on the Narcotics Unit was sent to 210 American Drive, Jackson, Tennessee, ("American Drive address").

In accordance with Local Bankruptcy Rule 9075–1(d), the debtors' complaint was set for an expedited hearing on May 28, 2009. The Bankruptcy Noticing Center, ("BNC"), filed a certificate of mailing on May 17, 2009, stating that it had served the debtors, counsel for the debtors, the Department of Safety, the Narcotics Unit, and the U.S. Trustee's Office with notice of the May 28, 2009, hearing. Notice to the Department of Safety was sent to the Foster Avenue address and notice to the Narcotics Unit was sent to the American Drive address. Because the matter was set on an expedited basis, the Court did not issue a summons. Instead, instructions for local form 9, "Complaint for Turnover of Property to the Estate," instructed plaintiff's attorney to give telephonic notice of the filing of the complaint and the hearing date and time to the defendants.

The Court granted the debtors' complaint for turnover at the May 28, 2009, hearing. The order directing the Department of Safety and the Narcotics Unit to turn over the Nissan was entered on June 15, 2009. The mailing information on the order stated that the debtors, debtors' counsel, the Chapter 13 Trustee, the Department of Safety and the Narcotics Unit were to be served with copies of the order. The listed addresses for the Department of Safety and the Narcotics Unit were Foster Avenue and American Drive. The BNC served copies of the order on the debtors, debtors' counsel, the Department of Safety and the Narcotics Unit at the listed addresses. The BNC did not serve the Chapter 13 Trustee with a copy of the order.

The Court issued a "Notice of Entry of Judgment" on June 15, 2009, which was sent to the same five parties listed in the order: the debtors, debtors' counsel, the Chapter 13 Trustee, the Department of Safety and the Narcotics Unit. The listed addresses for the Department of Safety and the Narcotics Unit were Foster Avenue and American Drive. The BNC served copies of the notice of entry of judgment on the same parties at the same addresses. The adversary proceeding was then closed on June 26, 2009.

On October 8, 2009, the debtors filed an expedited motion to reopen the adversary proceeding for the limited purpose of enforcing the Court's June 15, 2009, turnover order. According to the allegations of the motion, neither the Department of Safety nor the Narcotics Unit had complied with the order to return the Nissan to the debtors "despite having legal, actual, and constructive knowledge" of the order. Debtors' counsel served a copy of the complaint on the debtors, debtors' counsel, the Chapter 13 Trustee, the Department of Safety and the Narcotics Unit. The Department of Safety was served at the Foster Avenue address and the Narcotics Unit was served at the American Drive address. Additionally, the attorney for the debtors/plaintiffs served a copy of the motion to reopen on the Office of the Attorney General, Bankruptcy Division, at P.O. Box 20207, Nashville, Tennessee ("P.O. Box address").

The BNC served notice of the hearing on the debtors' motion to reopen on debtors' counsel, the United States Trustee's office, the Department of Safety (at the Foster Avenue address), and the Narcotics Unit (at the American Drive address). Although the Office of the Attorney General

had been listed on the motion to reopen, the BNC did not serve them with notice of the hearing.

The Court conducted a hearing on the motion to reopen on October 15, 2009, and granted the debtors' request to reopen the adversary proceeding at that time. The order granting the debtors' motion was entered on October 19, 2009. The certificate of service attached to the order granting the debtors' motion to reopen stated that the debtors, debtors' counsel, the Chapter 13 Trustee, the Department of Safety, the Narcotics Unit, and the Attorney General's office had all been served with a copy of the order. The listed service address for the Attorney General's office was the P.O. Box address.

The debtors filed an expedited motion for contempt against the Department of Safety and the Narcotics Unit on October 19, 2009. Pursuant to the terms of the motion, the debtors sought immediate turnover of the Nissan, monetary sanctions, compensatory damages and an award of attorneys fees and costs against the Department of Safety and the Narcotics Unit. The debtors attached two exhibits to their motion: a memorandum of law in support of their motion and the declaration of Angela D. Cook. Angela Cook's declaration set forth the following factual allegations:

1. On May 13, 2004, I, along with my husband Willie Lee Cook, filed for Relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee, Eastern Division.

2. On or about February 24, 2009, the Jackson Metro Narcotics seized a 1999 Nissan Altima that belonged to my husband and me.

3. A few months following the seizure of the vehicle, I received a notice from the State of Tennessee informing me that a hearing was scheduled for June 8, 2009 concerning the forfeiture of my 1999 Nissan Altima.

4. I appeared at the June 8, 2009 hearing that the State of Tennessee had scheduled. When my case was called, I informed the hearing officer that my husband and I were in a Chapter 13 bankruptcy and that my bankruptcy attorney, Mr. Jerome Teel, had filed paperwork seeking to have the 1999 Nissan Altima returned to me. The State of Tennessee's hearing officer informed me that "the papers weren't filed the correct way, and that they needed to be filed with the attorney general." The gentleman did state he received the paperwork, but that he was not going to be the one to represent the State of Tennessee in the bankruptcy proceeding. The June 8, 2009 forfeiture hearing was then continued.

5. On or about June 15, 2009, I was informed by Mr. Teel that this Court had entered an order which directed the Jackson Metro Narcotics and the State of Tennessee Department of Safety to return the 1999 Nissan Altima to me. Shortly thereafter I received a copy of the Court's Order.

6. I soon received another notice from the State of Tennessee informing me that the forfeiture hearing regarding the 1999 Nissan Altima had been reset for August 5, 2009. I appeared at the August 5, 2009 hearing and presented to the hearing officer a copy of the Order that this Court entered which directed the State of Tennessee and the Jackson Metro Narcotics to turnover the 1999 Nissan Altima to me. The

hearing officer told me that he was aware of the Order but that the Tennessee Attorney General's office objected to the Order and that they were going to handle the matter. My hearing was then continued.

7. I soon received yet another notice from the State of Tennessee informing me that the forfeiture hearing regarding the 1999 Nissan Altima had been reset for October 6, 2009. At the October 6, 2009 hearing, the same hearing officer informed me that the Tennessee Attorney General's office was to handle this matter. The hearing officer informed me that he had sent a copy of his file to the Attorney General's office some time ago and did not know why no action had been taken. My hearing was then continued. I have not received a new hearing date from the State of Tennessee.

8. Since the 1999 Nissan Altima was seized on or about February 24, 2009, I have not had access to it. To the best of my knowledge and belief, it remains in the possession, custody, and control of the Jackson Metro Narcotics and the State of Tennessee Department of Safety.

9. At the time that it was seized, the 1999 Nissan Altima was in good working condition and it was used regularly by me and my family. The deprivation of my use of my 1999 Nissan Altima has presented a hardship upon me and my family.

Debtors' counsel served a copy of the motion for contempt on the Department of Safety at the Foster Avenue address and on the Narcotics Unit at the American Drive address. Debtors' counsel also served the debtors, the Chapter 13 Trustee, and the Office of the Attorney General with a copy of the motion for contempt. The Attorney General was served at the P.O. Box address.

■ On October 27, 2009, the Office of the Attorney General, on behalf of the Department of Safety, filed a response to the debtors' motion for contempt. The Attorney General alleged that it had never been properly served with notice of the turnover action and had, in fact, not learned of the turnover proceeding and order until June 25, 2009, when it was contacted by the Department of Safety's Memphis office. Based on the alleged lack of proper service, the Attorney General's office asserted that the Court had no jurisdiction to order the Department of Safety to turn over the vehicle. Alternatively, the Attorney General's office argued that it had respected the Court's turnover order by not proceeding with the state forfeiture action. The Attorney General's response to the debtor's motion also sought dismissal of the underlying adversary proceeding.[2]

---

**2.** Technically the Attorney's General's Response and Amended Response were deficiently filed. Both pleadings were styled "Response by the State of Tennessee Department of Safety to Debtor's Motion to Enforce Previous Order and for Contempt and Sanctions and Motion to Dismiss Adversary." A response and a motion to dismiss cannot be filed in one pleading. Normally when this occurs, the Bankruptcy Court Clerk's office returns the pleading to the filer with a deficiency notice instructing them to file the response as a separate pleading and the motion to dismiss as a separate pleading; however,

in this case, the Clerk's office failed to discover the deficiency and accepted the pleadings for filing. The City of Jackson's October 29, 2009, response also was filed in the same deficient manner.

Because the response and motion to dismiss were filed as one document, a notice of hearing was never done on the motion to dismiss and it was never placed on the Court's calendar. At the hearing in this matter, the state and city both asked the Court to deny the debtors' motion for contempt and grant their motions to dismiss. Because the deficiency

The Narcotics Unit filed a response to the debtor's motion for contempt on October 29, 2009, in which it adopted the Attorney General's arguments and memorandum in support. The Narcotics Unit asked that the debtors' motion for contempt be denied and that the underlying adversary proceeding be dismissed. The Narcotics Unit is not a legal entity unto itself. It is joint task force comprised of officers from the City of Jackson Police Department and the Madison County Sheriff's Department. The debtors did not serve the police department or the sheriff's department with copies of any of the pleadings or notices in this case.

The Court conducted a hearing on the debtors' motion for contempt and the defendants' responses thereto on October 29, 2009. Angela Cook testified on behalf of the debtors. Her testimony was basically a restatement of the facts as set forth in her October 15, 2009, declaration attached as an exhibit to the motion for contempt.

Shortly after the Nissan was seized, Angela Cook received a "Petition for Hearing" from the Department of Safety which was issued in accordance with T.C.A. § 53–11–201. According to the form's instructions, the debtors had to complete the form in order to request a forfeiture hearing from the state. Angela Cook filled out the form on March 10, 2009. In accordance with the instructions at the bottom of page one, she also completed a "Uniform Civil Affidavit of Indigence" and attached it to the petition for hearing. On page two of the affidavit, Angela Cook indicated that she and her husband were in a "current chapter 13 bankruptcy." The form was notarized on March 10, 2009.

Once the Department of Safety received the petition for hearing from the debtors, it set the matter for a forfeiture hearing. The first setting was on June 8, 2009. Angela Cook appeared and informed the hearing officer that she and her husband had a pending bankruptcy case and that their attorney had filed a turnover complaint for the Nissan. The Department of Safety continued the matter twice: the first time to August 5, 2009, and the second time to October 6, 2009. Angela Cook attended all three settings for the forfeiture hearing. Each time she informed the hearing officer of the pending chapter 13 case and the turnover complaint and order. Angela Cook had to take unpaid leave from her job at Armstrong Flooring to attend the forfeiture hearings.

On cross examination, the Attorney General's office asked Angela Cook why she needed the Nissan returned to her. According to her bankruptcy schedules, the family owned one vehicle which was in working condition.[3] Angela Cook testified that return of the Nissan would provide the debtors' son with a means of transportation. If he had a car for his use, he would be able to help shuttle himself and the debtors' other child to and from activities thereby allowing Angela Cook to remain at work and earn more money.

The second witness called by the debtors was Joe Bartlett, ("Bartlett"), a staff attorney for the Department of Safety. Bartlett's role is to prosecute and administer forfeiture proceedings on vehicles seized by law enforcement agencies across the state. Bartlett was the hearing officer in the Cooks' case. He testified that

was never detected by the clerk's office, the Court will address the state's and city's motions to dismiss although technically they were never properly before the Court.

**3.** At the hearing in this matter, the parties never identified which vehicle the debtors were still in possession of. Based on their schedules, the Court is assuming that Angela Cook is currently using the Chevy Cheyenne.

Angela Cook appeared at the June 8, 2009, hearing and informed him of their pending chapter 13 case. Bartlett made a note on the Cooks' file to notify the Attorney General's office of the bankruptcy case. Bartlett further testified that the Department of Safety's standard procedure in bankruptcy matters is to seek advice on how to proceed from the Attorney General's office because of the issues with property of the estate, trustee's interests in property, etc. Bartlett's notes indicated that he contacted the Attorney General's office on June 25, 2009, to inform them of the Cooks' bankruptcy and then sent a hard copy of the file to the Attorney General's office on July 10, 2009. Bartlett further testified that he told Angela Cook that the proper party for service on the turnover action was the Attorney General's office and not the Department of Safety. Bartlett testified that his office received a copy of the turnover order on June 24, 2009.

Although aware of the Cooks' bankruptcy case, Bartlett continued the forfeiture hearing to August 5, 2009.[4] Angela Cook appeared at that hearing with her attorney. Bartlett knew that the Attorney General had not resolved the matter and, as a result, he could not move forward with the forfeiture hearing. Once again, Bartlett informed Angela Cook and her attorney that the Department of Safety was not the proper party for service of process in the turnover action. According to Bartlett's testimony, he informed Angela Cooks' attorney that he was happy to pass along the information to the Attorney General's office, but that service needed to be perfected in the matter by serving the state at the Attorney General's office. Because Bartlett did not have the authority

to proceed with the forfeiture hearing, he continued it yet again to October 6, 2009.

Angela Cook appeared at the October 6, 2009, forfeiture hearing. Bartlett testified that he had not received any guidance from the Attorney General's office indicating that he could move forward with the forfeiture hearing. Again, Bartlett informed Angela Cook and her attorney that the proper party for service of the turnover complaint was the Attorney General's office. The forfeiture hearing was continued a third time to January 13, 2010.

### Conclusions of Law

■ Resolution of this motion and the responses thereto turns on the issue of whether the state's actual notice of the turnover order is sufficient to find them in contempt of court despite the debtors' failure to properly serve the state. The debtors contend that once the Attorney General's office received notice from the Department of Safety that the Cooks were in a chapter 13 case and that the Court had ordered turnover of the Nissan, it was obligated to return possession of the Nissan to the debtors. Conversely, the Attorney General's office argued that the debtors' failure to serve the Attorney General's office with notice of the turnover action and order mandates dismissal of the underlying adversary complaint.

In this case, the debtors filed their § 542(a) complaint for turnover of the Nissan on May 15, 2009. Pursuant to 28 U.S.C. § 157(b)(2)(E) and Federal Rule of Bankruptcy Procedure 7001(1), a request for turnover of property must be filed as an adversary proceeding. Bankruptcy Rule 7004 provides that Federal Rule of

---

**4.** Bartlett testified that the Cooks' forfeiture hearing was continued rather than removed from the docket because of the volume of forfeiture matters handled by the Department of Safety. Bartlett's preference was to keep

the Cooks' case on the docket and continue it because that would keep the matter active on the forfeiture docket. Once a matter is removed from the docket, it can take up to four months to get another setting.

Civil Procedure 4(a), (b), (c)(1), (j), (*l*), and (m) apply in all adversary proceedings. Civil Rule 4 requires a plaintiff to serve a summons and copy of the complaint on the defendant within 120 days after the complaint is filed. Fed.R.Civ.P. 4(m). If the defendant is a state or local government, the plaintiff must serve the government's chief executive officer or "the person or office upon whom process is prescribed to be served by the law of the state in which service is made when an action is brought against such a defendant in the courts of general jurisdiction in that state...." Fed. R. Bankr.P. 7001(b)(6).

Tennessee Rule of Civil Procedure 4.04(6) requires that service of process on the state of Tennessee or any agency thereof shall be made by "delivering a copy of the summons and of the complaint to the attorney general of the state." Local Bankruptcy Rule 1007(a)(1) provides that when the Federal Rules of Bankruptcy Procedure require notice to the State of Tennessee or any of the State's agencies, including the Department of Safety, notice must be sent to the Tennessee Attorney General's Office at the following address: "(Agency or Department Name), Tennessee Attorney General's Office, Bankr.Unit, 425 Fifth Avenue N., 2nd Floor, Nashville, TN 37243–0488." Tennessee Rule of Civil Procedure 4.04(7) states that service upon a county is accomplished by "delivering a copy of the summons and complaint to the chief executive officer of the county, or if absent from the county, to the county attorney if there is one designated; if not, by delivering the copies to the county court clerk." Tennessee Rule of Civil Procedure 4.04(8) mandates that service upon a municipality must be made by "delivering a copy of the summons and of the complaint to the chief executive officer thereof, or to the city attorney." Tennessee Rule of Civil Procedure 4.04(9) provides that service upon any other governmental or quasi-government entity must be made "by delivering a copy of the summons and complaint to any officer or managing agent thereof."

None of the pleadings or notices in this case were ever sent to the correct address for the Attorney General. Nor were any of the pleadings and notices served on the City of Jackson Police Department or the Madison County Sheriff's Department. Prior to the filing of the motion to reopen the adversary, the debtors sent notice to the Department of Safety at the Foster Avenue address. They did not serve the Attorney General's office with notice of the complaint or the turnover order. When the motion to reopen and the motion for contempt were filed, the debtors served the Attorney General's office, but not at the 425 Fifth Avenue N. address, ("425 Fifth Avenue address"). Instead, the debtors directed service to a P.O. Box address in Nashville.

■■■ "For service to be proper, it must not only comply with the relevant rule, but must comport with due process by providing 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *LSJ Inv. Co., Inc., v. O.L.D., Inc.,* 167 F.3d 320, 323 (6th Cir.1999) (citation omitted). Proper service under Rule 4 is necessary for a court to obtain personal jurisdiction over a defendant in an adversary proceeding. *Omni Capital Int'l, Ltd., v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987); *Fifth Third Bank v. Mytelka,* 2009 WL 2046849, *2 (W.D.Ky.2009). "Unless a defendant voluntarily makes an appearance [without objecting to service] or waives defective service, a federal court is without jurisdiction if service of process is not made in accor-

dance with applicable federal or state statutory requirements...." *Scarton v. Charles,* 115 F.R.D. 567, 568 (E.D.Mich. 1987); *Robinson Engineering Co. Pension Plan and Trust v. George,* 223 F.3d 445, 454 (7th Cir.2000); *Sieg v. Karnes,* 693 F.2d 803, 807 (8th Cir.1982). Rule 7004 provides that service may be accomplished by personal service or by first class mail. FED. R. BANKR.P. 7004(a) and (b). Actual knowledge of an action cannot cure a technically defective service of process. *LSJ Inv. Co.,* 167 F.3d at 322; *Friedman v. Estate of Presser,* 929 F.2d 1151, 1156 (6th Cir.1991); *Rojek v. Catholic Charities, Inc.,* 2009 WL 3834013, *5 (E.D.Mich. 2009); *Meganck v. Couts (In re Couts),* 188 B.R. 949, 953 (Bankr.E.D.Mich.1995). A judgment is void if service of process is insufficient or defective. *LSJ Inv.,* 167 F.3d at 325. "[A]n order entered without either subject matter jurisdiction or jurisdiction over the parties is void and cannot provide the basis for a finding of contempt." *Konvalinka v. Chattanooga Hamilton County Hosp. Auth.,* 249 S.W.3d 346, 355 (Tenn.2008).

There is no dispute in this case that the debtors failed to properly serve the Attorney General, the City of Jackson Police Department and the Madison County Sheriff's Department. Service was never sent to the Attorney General at the 425 Fifth Avenue address as directed by Local Bankruptcy Rule 1007(a)(6) and Tennessee Rule of Civil Procedure 4.04(6). Additionally, neither the police department nor the sheriff's department were served in accordance with Tennessee Rule of Civil Procedure 4.04(7) and (8). Although the Attorney General's office and the City of Jackson conceded that they received actual notice of the turnover action and order around June 25, 2009, the plaintiff never effected proper service of process on any of the three defendants in this matter. As such, the Court never acquired juris-

diction over the Department of Safety or the Narcotics Unit. Consequently, the June 15, 2009, "Order on Complaint for Turnover" instructing the Department of Safety and the Narcotics Unit to return the Nissan to the debtors is void and the debtors' motion for contempt must be denied.

 Federal Rule of Civil Procedure 4(m) provides that:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). Absent a showing of good cause, Rule 4(m) mandates dismissal of a case. *Friedman,* 929 F.2d at 1157. The plaintiff bears the burden of establishing good cause. *Habib v. General Motors Corp.,* 15 F.3d 72, 73 (6th Cir.1994). A court may issue a sua sponte order to show cause why the plaintiff has failed to comply with Rule 4(m). *Stevenson v. Pramstaller,* 2009 WL 804748, *6 (E.D.Mich.2009). It is within the trial court's sound discretion to determine whether good cause has been shown. *Nafziger v. McDermott Int'l, Inc.,* 467 F.3d 514, 521 (6th Cir.2006). In deciding to exercise this discretion, a court may consider the following factors:

> (1) whether a significant extension of time is required;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent "prejudice" in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;

(4) whether a dismissal without prejudice would substantially prejudice the plaintiff; i.e., would her lawsuit be time-barred; and

(5) whether the plaintiff had made any good faith efforts at effecting proper service of process.

*Rojek*, 2009 WL 3834013 at \*7.

In the case at bar, the complaint for turnover was filed on May 15, 2009. Rule 4(m)'s 120–day time period expired on November 15, 2009. Pursuant to Rule 4's language, the Court is required to give the debtors an opportunity to demonstrate good cause for their failure to properly serve the Attorney General, the Jackson Police Department and the Madison County Sheriff's Department. Should the debtor demonstrate good cause at that hearing, the Court may extend the 120–day time period and allow the plaintiffs to properly serve the defendants.

At the hearing on these matters, both the Attorney General and the City of Jackson asked the Court to dismiss the underlying adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(5). Rule 12(b)(5) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Rule 12(b)(5) provides that "every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: ... (5) insufficient service of process." Because the Court is setting a Sua Sponte Order directing the debtors to demonstrate good cause, if any, for failure to timely and correctly serve the complaint, the Court will hold the Rule 12(b)(5) motions in abeyance until after a hearing on the Rule 4(m) issue.

It is **THEREFORE ORDERED** that:

(1) the debtors' Motion for Contempt and Sanctions is **DENIED**;

(2) the "Order on Complaint for Turnover" entered on June 15, 2009, is **DECLARED VOID** and is hereby **SET ASIDE**; and

(3) the defendants' Motions to Dismiss which were filed as part of their responses to the debtors' motion for contempt are hereby **HELD IN ABEYANCE** pending resolution of the Court's Sua Sponte Order and Notice for the Debtors to Show Cause why they failed to comply with the notice requirements of Federal Rule of Civil Procedure 4.

**IT IS SO ORDERED.**