# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2022

Lyle W. Cayce
Clerk

No. 21-50195

CANarchy Craft Brewery Collective, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Texas Alcoholic Beverage Commission; Kevin J. Lilly; Hasan K. Mack; Jason E. Boatright; Michael S. Adkins; Deborah Gray Marino,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-55

Before Dennis, Southwick, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

This is a case about beer. It turns on the meaning of the word "owned," a pint-sized word with stout implications for craft brewers in Texas.

In 2019, the Texas Legislature amended the Alcoholic Beverage Code to allow brewers and manufacturers to sell malt beverages to consumers for off-premises consumption—a previously untapped market for craft beer-to-go. But in a bit of a buzzkill, the Legislature also limited beer-to-go sales to

No. 21-50195

brewers and manufacturers that produced no more than 225,000 barrels annually "at all premises [they] wholly or partly *owned*." TEX. ALCO. BEV. CODE ANN. §§ 62.122(a) (2019), 12.052(a) (2019) (emphasis added).

Frothy at the prospects, CANarchy Craft Brewery Collective, LLC began selling beer-to-go from its two Texas-based breweries. But the Texas Alcoholic Beverage Commission (TABC) ordered CANarchy to cease and desist after TABC determined that CANarchy's facilities collectively exceeded the 225,000-barrel limit. Party over. CANarchy complied with the order but then filed suit, seeking a declaratory judgment that the 225,000-barrel threshold did not apply to barrels produced at *leased* premises. The district court agreed with CANarchy that "premises wholly or partly owned" do not include leased premises and granted it summary judgment. Party on. We agree with the district court's reading of the statutes and affirm.

## I.

## A.

One of the Texas Alcoholic Beverage Code's primary aims is "to prevent certain overlapping relationships between those engaged in the alcoholic beverage industry at different levels, or tiers." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 322 (Tex. 2017); *see also* TEX. ALCO. BEV. CODE ANN. §§ 6.03(i), 102.01(a)–(j). "The Code contains numerous provisions designed to achieve this overarching goal by separating the industry into three independent tiers: manufacturing (brewing), distribution, and retail." *Cadena Comercial*, 518 S.W.3d at 322. Under this system, brewers are generally prohibited from selling their products directly to retailers or consumers and instead must sell their products to wholesalers. *See* TEX. ALCO. BEV. CODE ANN. § 62.01.

Over time, the Texas Legislature has carved out exceptions to the three-tier system. The evolution of two such exceptions, codified in sections

No. 21-50195

12.052(a) and 62.122(a) of the Code, is relevant here. Section 12.052(a) initially authorized the holder of a brewer's permit to sell ale "to ultimate consumers on the brewer's premises" for on-site consumption so long as the brewer's "annual production of ale together with the annual production of beer by the holder of a manufacturer's license at the same premises [did] not exceed a total of 225,000 barrels." *Id.* § 12.052(a) (2013). Section 62.122(a) was identical except that it applied to the holder of a manufacturer's license who principally produced beer. *Id.* § 62.122(a) (2013).

The Legislature amended sections 12.052(a) and 62.122(a) in 2017 to clarify that the 225,000-barrel cap encompassed barrels produced "at all premises wholly or partly owned, directly or indirectly, by the permit [or license] holder or an affiliate or subsidiary of the permit [or license] holder." *Id.* § 12.052(a) (2017); *see id.* § 62.122(a) (2017). The statutes were again amended in 2019, this time to allow the holder of a brewer's permit or manufacturer's license to sell ale or beer "for off-premises consumption" if the holder's annual production "at all premises wholly or partly owned, directly or indirectly, . . . does not exceed a total of 225,000 barrels." *Id.* §§ 12.052 (2019), 62.122 (2019).[1]

---

[1] A note on nomenclature: In 2021, while this appeal was pending, the Legislature repealed section 12.052(a) and replaced brewer's permits and manufacturer's licenses with a single brewer's license under section 62.122(a). *See* Tex. Alco. Bev. Code Ann. § 62.122(a). The Legislature also consolidated "beer" and "ale" with the term "malt beverages." *See id.* §§ 1.09(a), 62.122(a). Streamlined language that tastes great, *and* is less filling. Though CANarchy brought its challenge under former sections 12.052(a) and 62.122(a), the operative language at the core of this case—the aggregation of beer produced at "all premises wholly or partly owned" for the purposes of the production cap—has remained consistent. *See id.* § 62.122(a).

No. 21-50195

## B.

CANarchy is a collective of seven affiliated brewers that, in turn, operate ten breweries across seven states. Aside from one brewery in Michigan, CANarchy leases all the premises on which its breweries produce their beer. Two CANarchy brewers operate breweries in Texas: Oskar Blues Brewery in Austin and Deep Ellum Brewing Company in Dallas. CANarchy holds a brewer's permit and manufacturer's license from TABC for both premises.

After sections 12.052(a) and 62.122(a) were amended in 2019 to allow beer-to-go sales directly to consumers, Oskar Blues and Deep Ellum began selling beer-to-go from their premises. TABC subsequently determined that CANarchy's "facilities both inside and outside of Texas collectively produce[d] over 225,000 barrels of malt beverages annually." TABC sent cease and desist letters to CANarchy's Texas brewers, informing them that they did "not qualify to sell malt beverages to consumers for off-premise[s] consumption."

Sobered by TABC's cease and desist letters, CANarchy stopped selling beer-to-go. But CANarchy also brought the matter to a head by draughting a Texas state court complaint against TABC and its Chairman and Commissioners in their official capacities, seeking two forms of declaratory relief. First, CANarchy sought a declaratory judgment that TABC's application of sections 12.052(a) and 62.122(a)—i.e., extending the 225,000-barrel production threshold to include barrels produced at premises outside of Texas—violated the dormant Commerce Clause. Second, and relevant here, it sought a declaratory judgment that the 225,000-barrel production threshold in sections 12.052(a) and 62.122(a) only includes barrels produced at premises owned, and not merely leased, by a brewer. Because all but 17,281 of the 475,543 barrels CANarchy produced in 2019

were produced at leased premises, CANarchy argued that it fell far below the 225,000-barrel production threshold set by the statutes.

TABC removed the case to federal court based on federal question jurisdiction, and the district court exercised supplemental jurisdiction over CANarchy's Texas statutory construction claim. Following discovery, both parties moved for summary judgment. CANarchy sought partial summary judgment on its statutory construction claim based on three primary arguments: first, that the ordinary meaning of the word "own" makes clear "that a leaseholder does not 'own' the property it leases"; second, that the Legislature's distinction between "owned" and "leased" in other parts of the Code establishes that the two terms are mutually exclusive; and third, that "partly owned" means owning "less than 100%" of the premises, not having a leasehold interest therein.

In its motion, TABC argued that CANarchy's interpretation of the statutes would stand at odds with the legislative intent behind the beer-to-go provisions and their subsequent amendments, namely, "to encourage entrepreneurial and small business development opportunities." Further, TABC argued that "owned" refers to "a 'bundle of sticks' or collection of rights with regard to [the] property, including the rights to possess, use, transfer, and exclude others." Thus, a lessee who possesses some of the sticks from that bundle "partly owns" the leased premises. TABC also moved for summary judgment on CANarchy's dormant Commerce Clause claim.

The district court granted partial summary judgment for TABC as to the dormant Commerce Clause claim.[2] As for CANarchy's statutory

---

[2] The district court denied TABC's motion for summary judgment with respect to CANarchy's discriminatory purpose argument, but granted it as to CANarchy's other

construction claim, the court denied TABC's motion and instead granted summary judgment for CANarchy. In doing so, the court looked to the ordinary meaning of "wholly or partly owned," as used in sections 12.052(a) and 62.122(a), and concluded that the language "unambiguously [did] not apply to CANarchy's breweries on leased land." The court reasoned that while "leaseholders certainly have some interest and rights associated with the leased premises, such an understanding does not equate to the leaseholder being an owner or part owner of the premises."

In the wake of the district court's ruling, CANarchy asked the court to enter final judgment as to its statutory construction claim and to grant a voluntary dismissal of its surviving dormant Commerce Clause claim. The court obliged and entered a final judgment declaring that "the 225,000-barrel production threshold in Texas Alcoholic Beverage Code §§ 12.052(a) and 62.122(a) includes only barrels of malt beverages produced by the brewer at all premises owned by the brewer and does not include barrels of malt beverages produced by the brewer at premises leased by the brewer." Rather than just cry in its beer, TABC timely appealed.

## II.

The district court had original jurisdiction over CANarchy's dormant Commerce Clause claim under 28 U.S.C. § 1331 and supplemental jurisdiction over CANarchy's state statutory construction claim under 28 U.S.C. § 1367. We have jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

"We review a district court's judgment on cross motions for summary judgment de novo, addressing each party's motion independently, viewing

---

dormant Commerce Clause theories (discriminatory effect and "clearly excessive" burden). CANarchy does not challenge that ruling here.

the evidence and inferences in the light most favorable to the nonmoving party." *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. When "interpreting a Texas statute, we use the same methods of statutory interpretation" used by the Supreme Court of Texas. *Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021).

## III.

The parties offer competing interpretations of the phrase "premises wholly or partly owned" in sections 12.052(a) and 62.122(a). Distilling their arguments, TABC asserts that the word "owned" includes leased premises, while CANarchy contends that it does not. We hop right to the analysis.

Under Texas law, the court's "fundamental goal when reading statutes 'is to ascertain and give effect to the Legislature's intent.'" *Cadena Comercial*, 518 S.W.3d at 325 (quoting *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012)). "We seek that intent first and foremost in the plain meaning of the text." *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). And "[w]here text is clear, text is determinative." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). "When faced with an undefined statutory term, our job is to apply the 'common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result.'" *Camacho*, 993 F.3d at 312 (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)). "To determine a term's common, ordinary meaning, we typically look first to dictionary definitions." *Rodriguez*, 547 S.W.3d at 838; *see also Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017) ("To determine a statutory term's

common, ordinary meaning, we typically look first to [its] dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities.").

Here, "owned" is undefined in the Code. We can glean a somewhat "more precise definition . . . from the statutory context," *Camacho*, 993 F.3d at 312, because "owned" modifies "premises," which the Code defines as "the grounds and all buildings, vehicles, and appurtenances pertaining to the grounds, including any adjacent premises if they are directly or indirectly under the control of the same person," Tex. Alco. Bev. Code Ann. § 11.49(a). In searching out the "common, ordinary meaning" of "owned," then, we focus on definitions that relate to real property.

Black's Law Dictionary defines "own" in relevant part as "[t]o rightfully have or possess as property; to have legal title to." *Own*, Black's Law Dictionary (11th ed. 2019). Similarly, Merriam-Webster's Dictionary defines "own" as "to have or hold as property; to have power or mastery over." *Own*, Merriam-Webster, https://www.merriam-webster.com/dictionary/own (last visited Jun. 3, 2022). These definitions, while not conclusive, suggest that the ordinary meaning of "owned" involves an interest in property greater than—and distinct from—that of a leasehold. Granted, possession is a right enjoyed by most, if not all, lessees. *See Lessee*, Black's Law Dictionary (11th ed. 2019) ("Someone who has a possessory interest in real or personal property under a lease."). But a lessee's right to possession exists only by virtue of a lessor's "legal title to," or "power or mastery over," the leased property. In other words, a leaseholder has only such rights as are granted by the lessor, and the leaseholder's rights continue to be subject to the superior rights held by the lessor—i.e., the owner of leased property continues "to have legal title to"

or "have power or mastery over" the property. The derivative rights held by a lessee are not synonymous with ownership of the leased property.

The broader statutory context puts to rest any lingering uncertainty. The Supreme Court of Texas has held that "[w]hen the Legislature uses a word or phrase in one part of a statute but excludes it from another, the term should not be implied where it has been excluded." *Cadena Comercial*, 518 S.W.3d at 329; *see also Coming Attractions Bridal & Formal, Inc. v. Tex. Health Res.*, 595 S.W.3d 659, 666 (Tex. 2020) ("We do not imply [a] term where the [L]egislature did not use it."); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) (same). That principle is significant here because, though the term "leased" is absent from sections 12.052(a) and 62.122(a), "leased" is expressly used—paired with "owned"—in at least nineteen other sections of the Code. *See* Tex. Alco. Bev. Code Ann. §§ 2.02, 11.61, 14.071, 14.08, 16.10, 16.11, 19.06, 19.07, 20.04, 20.05, 48.04, 61.71, 62.15, 63.01, 63.03, 64.10, 108.08, 108.73, 108.82.[3] Eleven of those sections specifically apply to premises or buildings that are "owned *or leased*." *See id.* §§ 2.02, 11.61, 14.08, 16.11, 19.07, 20.05, 48.04, 61.71, 108.08, 108.73, 108.82 (emphasis added).

TABC counters that the statutory context actually brews in its favor, citing sections 12.06, 13.04, 62.14, and 63.05 of the Code. Those sections reference brewers that "own [their] . . . facilities" *and* that "own a fee

---

[3] When this case was initially filed, the phrase "owned or leased" appeared in ten different Code sections. *See id.* §§ 2.02, 11.61, 45.01, 48.01, 61.71, 63.01, 63.03, 108.08, 108.73, 108.82 (2019). Since then, the Legislature has removed "owned or leased" from two sections, *see id.* §§ 45.01 (repealed 2021), 48.01, but added it to eleven more, *see id.* §§ 14.071, 14.08, 16.10, 16.11, 19.06, 19.07, 20.04, 20.05, 48.04, 62.15, 64.10. If anything, the Legislature's repeated use of "owned *or leased*" buttresses our conclusion that "owned" and "leased" are distinct terms, with distinct meanings, in the Code. And the repeated amendments show that when the Legislature sought to include both owned *and leased* premises within a Code section's scope, it has deliberately done so.

interest in a . . . facility." *Id.* §§ 12.06 (2019), 13.04 (2019), 62.14, 63.05. TABC reasons that "[u]nless the words 'a fee interest' . . . are surplusage, which a court should not presume, . . . the word 'own' as used in the Code must encompass more than fee ownership." Perhaps. But that does not necessarily mean that "owned" premises implicitly include "leased" ones too. To the contrary, if the Legislature intended for the word "owned" to encompass leasehold interests, then the word "leased," as used in the numerous other Code sections referenced above, would be mere surplusage. *See TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016) ("[W]e consider the statute as a whole, giving effect to each provision so that none is rendered meaningless or mere surplusage."). Given all this, we conclude that the Legislature intended for "owned" and "leased" to be distinct (and mutually exclusive) within the Code. *See Coming Attractions Bridal & Formal*, 595 S.W.3d at 666; *Cadena Comercial*, 518 S.W.3d at 329. And the Legislature's omission of "leased" from sections 12.052(a) and 62.122(a) indicates that it intended to count as part of the production cap only barrels produced at premises "owned" either in whole or in part by the brewer, and not at leased premises.

More generally, TABC urges a different analysis. It contends that "owned" should simply be given "its ordinary meaning under the common law," rather than construed by reference to dictionaries or other Code sections. According to TABC, the longstanding "common law understanding of property ownership encompasses possession of any stick from the property rights bundle" (e.g., possession, use, exclusion, alienation). Possession, as one of those sticks, would be sufficient to construe CANarchy's leased premises as "owned" for purposes of the brewing production threshold. We disagree.

We have not found, and TABC does not cite, any case in which a Texas court has conceptualized ownership as just one, or a specific number,

of "sticks" in a bundle of property rights.  Instead, the few Texas cases to discuss the term "owned" or its variants demonstrate that "own" has no well-established meaning in common law.  *See, e.g.*, *Realty Tr. Co. v. Craddock*, 112 S.W.2d 440, 443 (Tex. 1938) (finding the "term owner . . . has no definite legal meaning").  Some decisions even directly contradict TABC's proposed interpretation.  *See Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 546 (Tex. 2021) ("Property leased is not property owned."); *Holt v. Giles*, 240 S.W.2d 991, 993–94 (Tex. 1951) ("In its ordinary meaning an 'owner' is 'one who owns; a rightful proprietor; one who has the legal or rightful title, whether he is the possessor or not.'").  Regardless, judicial constructions are only instructive when determining a statutory term's ordinary meaning if that term has "acquired a technical or particular meaning," or a well-established definition in common law.  *See* Tex. Gov't Code Ann. § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning . . . shall be construed accordingly."); *Marino v. Lenoir*, 526 S.W.3d 403, 409 (Tex. 2017) ("[W]e construe statutory language against the backdrop of common law, assuming the Legislature is familiar with common-law traditions and principles.").  As the foregoing analysis demonstrates, "owned" has not obtained that status in Texas, so TABC's resort to the common law falls a bit flat.

Finally, TABC asserts that construing "premises wholly or partly owned" to exclude leased premises "would lead to absurd or unreasonable outcomes."  *Cf. Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (noting that "absurdity safety valve is reserved for truly exceptional cases").  TABC argues that reading "owned" to exclude leased premises in sections 12.052(a) and 62.122(a) will lead to absurd results because of the logical effect such a reading has on two other Code provisions,

sections 62.14 and 63.05.[4]  Those sections discuss a license holder's ability to operate under an "alternating brewery proprietorship," *see* Tex. Alco. Bev. Code Ann. §§ 62.14, 63.05, which is "an arrangement in which two or more parties take turns using the physical premises of a brewery," *id.* § 1.04. Subsection (b) of both statutes states that "[a]n entity is not required to own its brewing facilities if the entity operates under an alternating brewery proprietorship . . . ." *Id.* §§ 62.14(b), 63.05(b).

TABC contends that if we exclude leased premises from those "wholly or partly owned" in sections 12.052(a) and 62.122(a), then sections 62.14(b) and 63.05(b) "would require every brewery in Texas either to own its premises in fee simple or operate under an alternating brewery proprietorship."   And "[b]ecause relatively few Texas-based breweries operate under alternating proprietorship arrangements, [such a] reading could substantially disrupt the brewery industry in Texas."

We are unpersuaded.  As an initial matter, TABC did not argue absurdity—or cite to sections 62.14(b) and 63.05(b)—in the district court, so its argument on this issue is forfeited. *See Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) ("[P]resenting the issue 'face up and squarely in the trial court,' is necessary" to preserve it.  (quoting *Alston v. Town of Brookline*, 997 F.3d 23, 44 (1st Cir. 2021))); *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal . . . .").

---

[4] In its opening brief, TABC also referred to Code sections 12.06 and 13.04 in support of its absurdity argument.  Those sections have since been repealed. *See* Tex. Alco. Bev. Code Ann. §§ 12.06, 13.04, *repealed by* Acts 2019, ch. 1369, § 410(a)(1), 2019 Tex. Sess. Law Serv. 4992.  Because an absurd consequence is one that flows from current law, we will not consider the now-repealed statutes in our analysis.

That party foul aside, the only way TABC's allegedly absurd consequence arises is if TABC's interpretation of sections 62.14 and 63.05 is correct. Count us skeptical. Here is the text of those statutes: "An entity is not required to own its brewing facilities if the entity operates under an alternating brewery proprietorship." TEX. ALCO. BEV. CODE ANN. §§ 62.14(b), 63.05(b). From that language, TABC extrapolates a broad, inverse mandate that *unless* "[an] entity operates under an alternating brewery proprietorship," it *is required* "to own its brewing facilities."[5] But sections 62.14 and 63.05 focus on a niche type of brewing arrangement—one TABC concedes "relatively few" Texas brewers employ—and they set forth specialized requirements an "alternating" brewer must meet in the event it does not own its brewing facilities. *E.g.*, *id.* §§ 62.14(e), 63.05(e) (requiring a non-owner to post a bond as part of an alternating brewery proprietorship). No Texas court has construed sections 62.14(b) and 63.05(b), much less in the way that TABC asks us to read them. Given that the question has not been properly served up and TABC offers no authority to support its broad reading of these provisions, we decline to evaluate further the effect these relatively minor Code sections might have on the broader regulatory scheme at issue in this case.

## IV.

"It is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used, absent a context indicating a different meaning or the result of the plain meaning of the language yielding absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414–15 (Tex. 2011). The

---

[5] TABC apparently also equates "brewing facilities" with "premises," the term used in the Code sections at issue in our case. That is another assumption that may or may not bear scrutiny across the relevant Code sections.

ordinary definition of "owned," when applied to sections 12.052(a) and 62.122(a) of the Texas Alcoholic Beverage Code, establishes that the 225,000-barrel production threshold set in those statutes encompasses only barrels produced at premises owned by the brewer, either in whole or in part, and not at premises leased by the brewer.  Accordingly, the judgment of the district court is

AFFIRMED.