# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 14, 2024

Lyle W. Cayce
Clerk

————————

No. 23-10315

————————

Ed Laur; Marla Laur,

*Plaintiffs—Appellants*,

*versus*

Safeco Insurance Company of Indiana,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:21-CV-246

———————————————————

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.
Per Curiam:[*]

Ed and Marla Laur sued Safeco Insurance Company of Indiana after Safeco denied the Laurs' claim for water damage to their basement resulting from a frozen lawn irrigation pipe. The district court entered summary judgment in favor of Safeco and denied the Laurs' cross-motion for summary judgment. Resolving all issues on appeal in Safeco's favor, we affirm.

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-10315

## I.

The Laurs owned a home in Amarillo, Texas, at the center of this dispute. On February 21, 2021, an irrigation supply line in the home's backyard froze and then ruptured, causing the Laurs' basement to flood. The water damaged both the home and the Laurs' personal property. The Laurs held a Safeco homeowners insurance policy (the Policy)[1] at the time of the loss, and they timely submitted a claim to Safeco.

In March 2021, in response to the Laurs' claim, Safeco assigned Chris Royce of American Leak Detection to investigate. Royce made the following findings: "[T]he cause of the water damage to the dwelling [was] a rupture on the [two-inch] PVC irrigation supply in the valve box in the backyard"; "[t]he rupture appear[ed] to have been due to the irrigation line freezing during the period of time in which the temperatures were below freezing for several days"; and "[t]he water from this ruptured line appear[ed] to have run at ground level, between the soil and the concrete foundation of the back patio[.]" Both parties eventually designated Royce as a non-retained expert.

On March 24, 2021, Safeco denied coverage. Safeco's denial letter cited the Policy's exclusions, including those for losses caused by water damage and "[f]reezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a . . . sprinkler system." The Policy's relevant exclusion language states:

---

[1] The Laurs opted for the "Optimum Protection Homeowners Package" offered by Safeco, which modified Safeco's default policy language. As a result, references to the Policy, unless otherwise noted, are to the modified language under the Optimum Protection Homeowners Package. The district court relied on the default policy language rather than the Optimum Protection Homeowners Package purchased by the Laurs. But for the reasons discussed *infra*, this error was ultimately harmless.

2

**BUILDING PROPERTY LOSSES WE DO NOT COVER**

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of the cause of the loss or any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . .

**2.** Freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

. . .

However, we do insure from any loss from items **1.** through **5.** unless the resulting loss is itself excluded under **Property Losses We Do Not Cover** in this Section.

. . .

**9.** Water Damage, meaning:

**a.** **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind, including hurricane or similar storm; and

**(2)** release of water held by a dam, levee or dike or by a water or flood control device;

**b.** water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

**c.** water which escapes or overflows from sewers or drains off the [r]esidence [p]remises;

**d.**　　water which backs up, overflows or discharges, for any reason, from within a sump pump, sump pump well, or any other system designed to remove water which is drained from the foundation area;

Water includes any water borne materials.

This exclusion applies whether caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

Because the damaged home was under contract for sale, the Laurs paid out-of-pocket to repair the damage, and the sale subsequently closed. The Laurs then filed suit against Safeco in December 2021, alleging claims for breach of contract and violations of the Texas Insurance Code as a result of Safeco's denial of their claim. Safeco answered in February 2022, interposing Policy Exclusions 2 and 9 and asserting additional affirmative defenses. The parties filed cross-motions for summary judgment in December 2022. Both parties sought summary judgment regarding: the applicability of the "resulting loss" exception to Exclusion 2; whether the water that damaged the Laurs' basement was "below the surface of the ground" or "surface water," such that it triggered Exclusion 9; and liability for breach of contract and Insurance Code violations. The Laurs additionally moved for summary judgment on Safeco's affirmative defenses.[2] Safeco also sought summary judgment on the Laurs' bad faith claims.

The district court referred the parties' competing motions for summary judgment to the magistrate judge. The magistrate judge

---

[2] Safeco's affirmative defenses include failure to state a claim, policy exclusions, excessive demand doctrine, failure to mitigate damages, proportionate responsibility, waiver and estoppel, and the unconstitutionality of exemplary damages.

recommended that Safeco's motion be granted, and the Laurs' denied. Specifically, the magistrate judge recommended (1) "Exclusion 2 be found applicable to this case[,]" and because "losses resulting from freezing to, *inter alia*, a landscape sprinkler system are not covered[,]" "there is no coverage"; (2) a "landscape sprinkler system can perhaps best be thought of as a water control device," making Exclusion 9 applicable;[3] (3) "[t]he water at issue here was below the surface of the ground, further demonstrating the applicability of [E]xclusion [9]"; (4) because "Safeco [was] entitled to summary judgment on the breach of contract claim, all [of the Laurs'] extracontractual claims must likewise fail"; and (5) because the Laurs' summary judgment motion as to Safeco's affirmative defenses was "light on the facts" and "not a basis for summary judgment," it should be denied.

The Laurs timely objected to the magistrate judge's report and recommendation. But the district court adopted the report and recommendation and granted Safeco summary judgment. This appeal followed.

## II.

We review a district court's judgment on cross motions for summary judgment *de novo*, addressing each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *CANarchy Craft Brewery Collective, L.L.C. v. Tex. Alcoholic Beverage Comm'n*, 37 F.4th 1069, 1074 (5th Cir. 2022) (quotation omitted). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as

---

[3] The magistrate judge's reliance on the default policy language rather than the Optimum Protection Homeowners Package caused her to read Exclusion 9 as Exclusion 8, and left the magistrate judge without the benefit of the "resulting loss" exception language recited above. Regardless, the resulting loss language is irrelevant because, as explained herein, the water damage the Laurs suffered is specifically excluded from coverage.

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). "We construe all facts and inferences in the light most favorable to the nonmov[ant] . . . ." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

## III.

In the insurance context, insureds like the Laurs bear "the initial burden of showing that there is coverage, while the insurer [then] bears the burden of proving the applicability of any exclusions in the policy." *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998); *see also Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insurer proves an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion applies. *Gilbert Tex. Constr.*, 327 S.W.3d at 124.

On appeal, the parties contest the applicability of the Policy's exclusions. The Laurs first contend that Exclusion 2 does not preclude coverage for the damage to their basement because the damage "was a 'resulting loss' of the 'freezing . . . to a . . . landscape sprinkler system,'" rather than a loss directly flowing from the burst pipe. As to Exclusion 9, the Laurs argue that the district court erred in several respects: They assert that a landscape sprinkler system is not a "water or flood control device," Safeco failed to offer evidence that the damaging water was either "below the surface of the ground" or "surface water" as those terms are used in Exclusion 9, and their basement was not damaged by a "flood."

6

Safeco, on the other hand, contends that the Laurs failed to carry their initial burden to show coverage, and, to the extent they did so, that their loss is excepted from coverage by Policy Exclusions 2 and 9. As a practical matter, if any part of Exclusion 9 applies, there is no coverage notwithstanding Exclusion 2's applicability—something the Laurs effectively conceded during oral argument in this court. For the reasons discussed below, we agree with Safeco that Exclusion 9 forecloses coverage, so we focus on that provision for the balance of our analysis.

In interpreting insurance contracts, Texas courts give words "their plain, ordinary meaning unless the parties intended the term to have a different, technical meaning." *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 805 (5th Cir. 2010) (citing *DeWitt Cty. Elec. Coop. Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999)).[4] The Policy does not define any of the terms at issue. Therefore, we do so by resorting to "their plain, ordinary meaning," deploying well-established canons of contract construction as needed so that no provisions of the Policy are rendered meaningless. *Id.*; *see also Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

Exclusion 9 bars coverage for "Water Damage," whether "caused by or resulting from human or animal forces or any act of nature." It excludes from coverage damage caused by, among other things:

**a.** **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these . . . ;

**(2)** Release of water held by a dam, levee or dike or by a water or flood control device; [and]

---

[4] "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) (citation omitted). Accordingly, we apply Texas substantive law in construing the Policy.

**b.** Water below the surface of the ground[.]

If the damaging water falls within *any* of the preceding terms, Safeco prevails.

Though quite sympathetic to the Laurs' predicament, we conclude the offending water falls within Exclusion 9's confines. At a minimum, the district court properly found that the damaging water fit within Exclusion 9(b) because the water originated "below the surface of the ground."[5] And while it is less clear that the district court also considered whether the offending water was "surface water" as that term is used in Exclusion 9(a)(1),[6] the record supports that, at least for part of its journey to the Laurs' basement, the water also flowed at ground level. So there is no genuine dispute that the damaging water was either "below the surface of the

---

[5] The district court held that the Laurs' landscape sprinkler system was a "water control device" as listed in Exclusion 9(a)(2). We disagree. While the term is undefined by the Policy, the district court's conclusion that the Laurs' irrigation system "can perhaps best be thought of as a water control device" is overbroad. A landscape sprinkler system—designed to water lawns and landscaping—is fundamentally different from a dam, levee, dike, or "water or flood control device." Indeed, all the other items listed in Exclusion 9(a)(2) appear designed to *prevent* the flow of water from one area to another. Thus, the Laurs' irrigation system may be a *device that controls water*. But it is not a "water control device" as articulated in Exclusion 9(a)(2). This distinction is buttressed by the fact that the Policy separately addresses coverage for damage stemming from a "landscape sprinkler system." That Exclusion 9 does not employ that term suggests that "water control device" does not include the "landscape sprinkler system" with which the Laurs' house was equipped.

[6] The parties disagree that the district court reached the issue of whether the water that caused the Laurs' loss amounts to "surface water" as used in the Exclusion 9(a)(1). The magistrate judge's report and recommendation generally notes that Exclusion 9 "concerns damage caused by surface and subsurface water," suggesting the district court considered Exclusion 9(a)(1). Regardless, we may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012).

ground," or "surface water," or both.  Any of these scenarios dooms the Laurs' claims and leads to summary judgment for Safeco.

The phrase "below the surface of the ground" is undefined in the Policy.   At least one Texas intermediate appellate court has held that "water below the surface of the ground" is "water of a natural origin."  *Adrian Assocs., Gen. Contractors v. Nat'l Sur. Corp.*, 638 S.W.2d 138, 141 (Tex. App.—Dallas 1982, writ ref'd n.r.e.).  But the Policy here clearly states that Exclusion 9's Water Damage exclusion "applies whether caused by or resulting from human or animal forces or any act of nature."  Thus, we read Exclusion 9(b) to encompass *any* subterranean water—regardless of its source.

With that in mind, the record establishes that the damaging water must have run, at least for part of its journey, below the surface of the ground. Marla Laur testified that the frozen irrigation pipe ran underground. Safeco's investigator Chris Royce likewise stated that the "irrigation line that caused the flooding" was in a "valve box *in the ground* in the backyard." Finally, photographs from Royce's report show that the supply lines to and from the ruptured fitting ran underground.

True, Royce's photos show that the burst pipe was accessible, i.e., partly exposed, via the "valve box" in the Laurs' backyard.  Royce also stated that the damaging water "appear[ed] to have run at ground level, between the soil and the concrete foundation of the back patio."  But those facts do not contradict that the water *originated* "below the surface of the ground," emerging at surface level from an otherwise subterranean source.  Thus, the damaging water falls within Exclusion 9(b).

Moreover, rather than frustrating summary judgment, Royce's findings are doubly problematic for the Laurs because they also support that the water that damaged the Laurs' basement was *surface water*, which

precludes coverage under Exclusion 9(a)(1). Either way, the district court's summary judgment for Safeco was proper.

And if Exclusion 9(a)(1) and 9(b) did not preclude coverage on these grounds, Exclusion 9(a)(1) additionally bars coverage to the extent the Laurs' basement was damaged by a "flood." As with "surface water" and "water below the surface of the ground," the Policy states that "flood" damage is excluded whether "caused by or resulting from human or animal forces or any act of nature."

The Laurs urge that the "flood" exclusion is inapplicable, focusing on the *type* of water that damaged their basement. Texas courts define flood water as water of a "terranean nature,—*i.e.*, water overflowing from its natural banks or which does not form a well-defined body of water[.]" *State Farm Lloyds v. Marchetti*, 962 S.W.2d 58, 61 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). From that premise, the Laurs contend that because their loss was "caused by a residential water leak[,]" the damage was not because of "a 'flood' within the meaning of Exclusion [9(a)(1)]." This argument misses the mark.

Exclusion 9 applies regardless of the cause of the offending water, so it makes no difference whether the Laurs' basement flooded from a burst sprinkler line or from water of a "terranean nature"; Exclusion 9 prevents coverage for damage because of the resulting "flood." Further, Exclusion 9(a)(1) excludes "water damage" from "flood," "surface water," "tidal water," and "overflow from a body of water" from the Policy's coverage. The fact that "flood" is not "flood *water*," as with other enumerated categories of peril, suggests that the Policy excludes from coverage damage caused by the *act* of flooding—irrespective of the source of flooding. *See In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) (citation omitted) ("Courts may not rewrite the parties' contract, nor should courts add to its

language."). Along that theme, the Laurs' reading of "flood" as employed in Exclusion 9(a)(1) renders the clause "overflow from a body of water" superfluous. *See id.* (citation omitted) ("The Court must read contractual provisions so none of the terms of the agreement are rendered meaningless or superfluous."). Taken together, the Policy's terms indicate that a "flood" is distinct from an "overflow from a body of water," and that both work to exclude coverage whether "caused by or resulting from human or animal forces or any act of nature." Given that Royce, and even the Laurs,[7] characterize their loss as resulting from a flood of their basement, the Laurs' loss is excluded from coverage on this additional basis under Exclusion 9(a)(1).

## IV.

Finally, the Laurs argue that "summary judgment should not [have] be[en] granted on the Laurs' bad faith claim because the Laurs submitted sufficient evidence to raise a fact question on that claim." To support their argument, the Laurs maintain that "Safeco knew or should have known that liability was reasonably clear when it denied the claim." This argument falters, for two reasons. First, because the district court properly granted Safeco's motion for summary judgment on the Laurs' underlying coverage claim, the Laurs' bad faith claim necessarily fails. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 497 (Tex. 2018) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)).

Beyond that, the record substantiates at least that the parties had a bona fide dispute as to Safeco's liability for the Laurs' loss. An insurer

---

[7] As Safeco points out, the Laurs stated multiple times in their motion for summary judgment and in opposition to Safeco's motion for summary judgment that their loss was caused by flood.

breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability is reasonably clear. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) (citation omitted). Evidence that establishes only a bona fide dispute does not demonstrate bad faith. *Id.* (citation omitted). Here, even viewing the record most favorably to the Laurs, the parties' competing interpretations of the Policy's exclusions as applied to the Laurs' underlying coverage claim show that Safeco's liability for their damage was anything but reasonably clear when Safeco denied coverage.[8]

\* \* \*

Based on the foregoing, the district court's grant of Safeco's motion for summary judgment and denial of the Laurs' cross-motion are

AFFIRMED.

---

[8] The Laurs also contend that the district court erred in denying their motion for summary judgment as to Safeco's affirmative defenses. Because we affirm the grant of summary judgment against the Laurs' underlying claims, we need not reach this issue.