# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2026

Lyle W. Cayce
Clerk

_____

No. 24-20018

_____

WILMINGTON SAVINGS FUND SOCIETY, FSB, *doing business as Christiana Trust, as Trustee*,

*Plaintiff—Appellee*,

*versus*

LEEROY M. MYERS; BARBARA MYERS,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-88

_____

Before SMITH, GRAVES, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Wilmington Savings Fund Society, FSB (Wilmington Savings) brought an action for breach of contract and foreclosure against Leeroy M. Myers and Barbara Myers of a home equity loan secured by property located at 12215 Carola Forest Drive, Houston, Texas. The district court denied the Myerses' motions to dismiss on July 29, 2022, and January 27, 2023.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-20018

Following a hearing on June 2, 2023, the district court granted summary judgment in favor of Wilmington, and the borrowers appealed. For the reasons stated herein, we AFFIRM.

## I.

Leeroy and Barbara Myers (collectively "the Myerses") obtained a home equity loan for $50,000 from lender Home123 Corporation in 2006.[1] Only Leeroy signed the loan note, but it was secured by a Texas Home Equity Security Instrument (deed of trust) signed by both Leeroy and Barbara as borrowers. Paragraph 21 of the note stated that the lender "shall give notice" to the Myerses prior to acceleration.

The Myerses defaulted on the loan in 2009. The default resulted in correspondence, notices, filings, and actions by the various mortgage companies and loan servicers who acquired the loan over the years.

Litton Loan Servicing, LP filed a Verified Tex. Rule Civ. P. 736 Application for Home Equity Foreclosure Order against the Myerses in state court on June 11, 2010. The Myerses filed a pro se answer on July 28, 2010. The Myerses asserted, in part, that they had continued making their loan payments to a previous loan servicer, Saxxon Mortgage Services. They also disagreed with the loan being converted to escrow. A foreclosure order was later entered.[2]

---

[1] New Century Mortgage Corporation conducted business under the name Home123 Corporation.

[2] The Home Equity Foreclosure Order was stamped filed on August 3, 2010. But the judge's signature was dated September 27, 2010. The order also included a handwritten note that "the foreclosure sale may not occur before the February 2011 sale date."

No. 24-20018

On January 26, 2011, Litton assigned the deed of trust to Green Tree Servicing, LLC. Green Tree accepted payment from the Myerses in 2012 and sent a Rescission of Acceleration letter on August 19, 2013. Green Tree sent a notice of default and intent to accelerate on April 23, 2014. The following January, Green Tree provided another notice of default and intent to accelerate. On October 30, 2015, Green Tree, which had become Ditech Financial LLC, filed a second Application for an Expedited Order Under Rule 736 on a Home Equity Loan. In 2016, the Myerses filed a petition in state court to dismiss the application and quiet title based on limitations. Ditech removed the matter to federal court. On June 14, 2017, the district court granted summary judgment to Ditech. *See Myers v. Ditech Financial LLC*, ECF No. 4:16-cv-01053, 2017 WL 2573413 (S.D. Tex. June 14, 2017). The district court found that Ditech had effectively and timely rescinded the 2009 acceleration by its August 19, 2013, notice. The district court also found that Ditech had effectively abandoned the 2009 acceleration by other acts, including acceptance of an installment payment in September 2013, and that they were not time-barred from seeking foreclosure.

Ditech later assigned the loan to Wilmington Savings. Wilmington filed an Application for an Expedited Order Under Rule 736 on a Home Equity Loan on November 18, 2019. The Myerses moved to dismiss based on limitations. On January 7, 2021, Wilmington filed notice of nonsuit and notice of rescission of acceleration. The following day, the district court entered an order granting dismissal.

Significant here, notice of default and intent to accelerate was provided by Selene Finance to Leeroy Myers on January 29, 2021, demanding payment for all past due amounts. The letter identified the next payment due date as July 1, 2009, and the total to cure the default as $104,703.90. The letter also stated that "[a]s of 01/29/2021, the current

outstanding principal balance is $43,529.12 and the total debt you owe is $92,249.33."

Wilmington Savings filed an action for breach of contract and foreclosure on January 10, 2022. The Myerses moved to dismiss under Rule 4(m) of the Federal Rules of Civil Procedure on July 21, 2022. The district court denied that motion on July 29, 2022, stating that counsel for the Myerses had not entered an appearance before filing it. Counsel for the Myerses entered an appearance and waived service on that same date. The Myerses filed another motion to dismiss on August 19, 2022. That motion was heard and denied on January 27, 2023.

In the meantime, Wilmington Savings moved for summary judgment on January 23, 2023. On February 10, 2023, the Myerses filed an answer and a counterclaim. After various other motions and filings, the district court granted summary judgment in favor of Wilmington Savings following a hearing on June 2, 2023. The original written judgment entered June 22, 2023, was titled "Plaintiff Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not Individually but as Trustee for Pretium Mortgage Acquisition Trust's Motion for Summary Judgment." (Capitalization altered). After the judgment was entered, the Myerses moved to reopen the case and alter the judgment. The district court granted the motion in part to amend the title to "Amended Final Judgment." The Amended Final Judgment was entered on August 4, 2023. The Myerses filed another motion to alter the judgment the following month. The district court denied that motion on December 13, 2023. The Myerses then filed a notice of appeal on January 12, 2024. This court denied the Myerses' opposed motion for stay pending appeal. Thereafter, the Myerses filed petitions for bankruptcy multiple times, only to have the petitions struck or dismissed by the bankruptcy court.

No. 24-20018

## II.

This court reviews the grant of summary judgment de novo, applying the same standards as the district court. *Union Pacific R.R. v. City of Palestine, Tex.*, 41 F.4th 696, 703 (5th Cir. 2022). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "There is no requirement that the trial judge make findings of fact," although they may be extremely helpful. *Id.* at 250, n. 6. We "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

Standing is a question of law reviewed de novo. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015). Whether the district court has personal jurisdiction is also a question of law reviewed de novo. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 528-29 (5th Cir. 2014). We review a district court's jurisdictional findings of fact for clear error. *Id.* at 529; *see also N. Cypress*, 781 F.3d at 191.

## III.

*A. Personal jurisdiction*

The Myerses assert that the district court lacked personal jurisdiction because they were not properly served with process as required by 28 U.S.C. § 3004, which states that service of process on an action "under this chapter shall be served in accordance with the Federal Rules of Civil Procedure unless otherwise provided in this chapter." 28 U.S.C. § 3004(a). They specifically assert that the June 28, 2022, and July 8, 2022, entries on the

district court's docket reflect that the return of service was unexecuted. The Myerses also assert that the notice of summons and complaint letter attached as an exhibit to the unexecuted return filed on July 8 was unsigned and sent only to the Myerses, not to their counsel. Thus, the Myerses assert that the district court had no jurisdiction to conduct an ex parte scheduling conference on July 12, 2022.

The Myerses assert that Rule 4 is the beginning step of any personal jurisdiction analysis. They cite *Omni Capital International v. Rudolf Wolff & Co.*, 484 U.S. 97, 103-04 (1987), for the proposition that "This is so, because, usually, whether a 'defendant is amenable to service' is a 'prerequisite' to a court's exercise of personal jurisdiction." But the Supreme Court actually said:

> Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni*, 484 U.S. at 104. The relevant issue there was whether the Commodity Exchange Act (CEA) authorized service of process in a private action against foreign defendants. The Supreme Court agreed with this court that the CEA did not authorize service of process on the foreign defendants in a private action. *Id.* at 107-08. Because there was also no contention that the foreign defendants could be reached under the Louisiana long-arm statute, the Court also concluded that personal jurisdiction was lacking. *Id.* at 108. There is no such issue here.

The Myerses cite *Way v. Mueller Brass Company*, 840 F.2d 303, 306 (5th Cir. 1988), for the proposition that their actual notice of the litigation

was insufficient to satisfy the requirements of Rule 4. In *Way*, the plaintiff served a local manager of a state commission rather than either the chief executive officer or the Attorney General as required by Rule 4 of the Federal Rules of Civil Procedure. *Id.* at 305; *see also* Fed. R. Civ. P. 4(j). The commission filed an answer that reserved all defenses and pointed out the improper service. *Id.* at 305-06. After more than 120 days had passed and the plaintiff still had not served the proper party, the commission filed a motion to dismiss under Rule 4. *Id.* at 306. Way's counsel responded by filing an affidavit of good cause, asserting that he had not known about the service insufficiency until the filing of the motion to dismiss and that service on the local manager should suffice since the state commission had actual notice. *Id.* This court disagreed, saying "[c]onsidering that the deficiency in service was expressly asserted and explained in the Commission's answer some four and a half months earlier, counsel's ingenuousness cannot be considered good cause." *Id.* Further, this court declined to "twist the plain words of the statute," reiterated that the agency did not waive its objection to service of process, and concluded that dismissal was proper. *Id.* However, as discussed below, Wilmington Savings was able to establish good cause. Thus, *Way* is easily distinguished.

Numerous attempts at personal service of process were made on the Myerses and their attorney, Ira Joffe, under Rule 4 of the Federal Rules of Civil Procedure before Wilmington Savings then attempted to serve the Myerses by mail on May 10, 2022, under Rule 5. *See* Fed. R. Civ. P. 4, 5(b)(2)(C). There were also numerous other factors to indicate that the Myerses had adequate notice. For example, Joffe sent various correspondence acknowledging the matter and the attempts at service over several months. Joffe sent a letter in February 2022 that chastised Wilmington's counsel for not sending a waiver to keep costs down or giving him a courtesy call before sending a process server. A waiver was

subsequently sent to Joffe, and he refused to sign it. Further, Joffe maintained that he had represented the Myerses on the matter for years while simultaneously refusing to enter an appearance and asserting that he did not have permission to accept process.

During the scheduling conference on July 12, the district court said: "We received no entry of appearance from defendants' counsel. I am alarmed by his reported conduct. What kind of relief can you ask for at this point?" Wilmington's counsel responded:

> Well, at this point, we believe that service has been perfected pursuant to Rule 5(b)(2)(C) and we intend on moving for summary judgment. We would just ask the [c]ourt, you know, given that there's no appearance on behalf of the defendant, whether we need to still have a scheduling order in place or just have a deadline by which we need to move for summary judgment.

The court gave them 30 days in which to file a motion for summary judgment and the conference was adjourned.

On July 21, 2022, the Myerses filed a motion to dismiss under Rule 4(m) asserting that they had not been served with process. The district court denied the motion at the scheduling conference on July 29, 2022. Joffe filed the motion and appeared for that conference without filing an entry of appearance. However, Joffe told the court that he "would have thought that filing the motion would count as an entry of appearance." The district court then asked if he was willing to concede his entry of appearance and Joffe said, "I'm entering it under protest because of the lack of service, but I guess I'm here." The district court then told Joffe: "[Ninety] days is something I can renew or extend, but I'm concerned that maybe your clients are trying to defeat service of process." Joffe replied:

No, Your Honor, they are not. There was only one attempt by a process server who went to their house; and since then, I was contacted on the day right before the deadline about accepting service and I wrote back – and I believe the court may have seen that letter – that I could not accept service because we believed that limitations had expired.[3]

The district court explained to counsel, "[b]ut service of process is different from conceding that the other side has a meritorious lawsuit. It just gets the process rolling so all parties can be before the court. And I think that, especially because your clients do not believe they have any remaining liability to the plaintiff, they'd want to join the lawsuit to clear that up, get a release of lien." When the district court asked if Joffe's clients would accept service then, Joffe said: "If they issue a new summons, because the current one is expired, I will accept service of that if they'll send me a waiver." Wilmington asked the court to find good cause to extend the time for service based on their numerous attempts at service and the increased cost that the Myerses had caused. The district court granted the extension until September 1st. But a short time later, Joffe agreed to accept service without the issuance of a new summons. Joffe later confirmed with the district court that July 29 was the effective date of service.

The Myerses filed a Rule 12 motion to dismiss, again arguing that they were not properly served. That motion was heard on January 27, 2023. The district court found that the defendants intentionally avoided service of process, making specific reference to Joffe's letter dated May 20, 2022, and denied the motion. The record supports that finding.[4]

---

[3] The record establishes that there were multiple attempts.

[4] The Myerses also assert that the letter they received from counsel for Wilmington Savings was insufficient to comply with the requirements of Rule 4. The letter said, "[e]nclosed please find a copy of the summons and complaint. After many attempts to

*B. Standing*

The Myerses argue that Wilmington has no standing to enforce the note because the note was non-negotiable under Texas law and because Wilmington never proved ownership of the note or the contractual right to enforce it. *See* Tex. Bus. & Comm. Code Ann. §§ 3.104(a), 3.106. Thus, they assert that the district court had no jurisdiction. The Myerses concede that, if the note were a negotiable instrument, then the signature page would sufficiently establish Wilmington's claim to ownership and foreclose their standing argument.

Wilmington Savings asserts that the Myerses forfeited the claim that the note was non-negotiable by failing to raise it in the district court. We agree. *See  CANarchy Craft Brewery Collective, L.L.C. v. Tex. Alcoholic Beverage Comm'n*, 37 F.4th 1069, 1077 (5th Cir. 2022). Thus, as the Myerses concede, their standing argument is foreclosed.

In granting summary judgment, the district court found that Wilmington Savings holds a first lien securing the home equity loan on the property. The district court also found that Wilmington Savings is the current owner and holder of the note with rights to enforce it and the security instrument. In doing so, the court found that Wilmington Savings had performed its contractual obligations while the Myerses had defaulted. Thus, Wilmington Savings was authorized to foreclose its interest in the

---

serve in person and on your attorney, we are serving by mail pursuant to Rule 5(b)(2)(C)." The letter was on "McCarthy Holthus" law firm letterhead and closed with, "Sincerely, McCarthy & Holthus, LLP." Wilmington Savings did not argue that the letter, which explicitly relied on Rule 5(b)(2)(C), somehow established service of process under Rule 4. Regardless, again, Wilmington Savings was able to establish good cause for purposes of Rule 4.

property under the terms of the deed of trust and Texas law. The record supports these findings.

## C. Waiver and limitations

The Myerses assert that the foreclosure claim was waived because it accrued as early as 2009, but Wilmington Savings and its predecessors repeatedly abandoned the right to proceed. The Myerses also assert that the four-year statute of limitations that accrued no later than 2015 expired in 2019 before the complaint was filed in 2022. *See* Tex. Civ. Prac. & Rem. Code § § 16.035(a), (d).

Wilmington Savings asserts that abandonment or rescission of the accelerations restored the original maturity date and reset the limitations period. Wilmington also argues that rescission neither affects its right to accelerate in the future nor waives past defaults. The district court found as much. The record supports the district court's findings.

Moreover, the Myerses did not appeal the district court's grant of summary judgment to Ditech in 2017. *See Myers*, ECF No. 4:16-cv-01053, 2017 WL 2573413. A final judgment was entered that same date, June 14, 2017. They are precluded from relitigating matters decided pursuant to that decision. *See United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994). They may also be estopped from asserting a position contrary to a previous position. *See Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).

## IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Wilmington Savings.